ISAAC ANDERSON v. THE CITY OF WELLINGTON.

SALVATION ARMY — *Street Parade* — *City Ordinance, Void.* An ordinance of a city of the second class that declares it unlawful for any person or persons, society, association or organization, under whatsoever name, to parade any public street, avenue or alley of the city, shouting, singing, or beating drums or tambourines, or playing upon any other musical instrument or instruments, or doing any other act designed, intended or calculated to attract or call together an unusual crowd or congregation of people upon any of said public streets, avenues or alleys, without first having obtained in writing the consent of the mayor, or in his absence, the president of the city council, city clerk, or city marshal, in the order named, authorizing such parade, is of doubtful delegated power, is unreasonable, does not fix the conditions uniformly and impartially, contravenes common right, and is illegal and void.

*Error from Sumner District Court.*

PROSECUTION for a violation of a certain ordinance of the city of Wellington. At the September term, 1887, of the district court, *Isaac Anderson* was found guilty, and fined $10

and the costs of the prosecution, and was ordered to be committed to jail until the fine and costs were paid.    He appeals. The material facts are set forth in the opinion.

*Halsell & Ray,* and *Ready & Ready,* for appellant.

*Isaac G. Reed,* city attorney, and *McDonald & Parker,* for The City.

Opinion by SIMPSON, C.: On the 15th day of August, 1887, the following ordinance was duly passed and approved by the mayor and council of the city of Wellington, then and now a city of the second class, to wit:

### "ORDINANCE No. 422.

"AN ORDINANCE for the regulation of street parades, and the prevention of public disturbances and breaches of the peace.

"*Be it ordained by the Mayor and Councilmen of the city of Wellington, Kansas:*

"1. It shall be unlawful for any person or persons, society, association or organization, under whatsoever name, to parade any public street, avenue or alley of the city of Wellington, Kansas, shouting, singing, or beating drums or tambourines, or playing upon any other musical instrument or instruments, or doing any other act or acts designed, intended or calculated to attract or call together an unusual crowd or congregation of people upon any of said public streets, avenues or alleys, without having first obtained in writing the consent of the mayor of said city, authorizing such parade.    In case of the absence of the mayor from the city, such consent may be granted by the president of the council, city clerk, or city marshal, in the order named: *provided,* that the provisions of this section shall not apply to funerals, fire companies, regularly organized companies of the state militia, or United States troops.

"2. Any person or persons violating any of the provisions of section one of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction in the police court of the city of Wellington shall be fined in any sum not less than five dollars nor more than one hundred dollars, or imprisonment for a period not exceeding ninety days, or both such fine and imprisonment, in the discretion of the court.

"3. This ordinance shall take effect and be in full force ·

from and after its publication once in the official newspaper. of the city of Wellington, Kansas."

The ordinance, duly signed and attested, was, on the 17th day of August, 1887, published in the *Wellington Morning Quid-Nunc*, a paper printed and published in said city, and known and recognized as the "official newspaper" thereof; and the issue of said newspaper which contained said publication was printed, delivered and distributed throughout the city before and by the hour of 7 o'clock A. M. of said day. At about 8 o'clock in the evening of the same day, the appellant and others, calling themselves the "Salvation Army," assembled at their hall or "barracks" in the city, and under the command of their female "captain" (Shiltz), who had seen and read the published ordinance in the morning, proceeded to parade Washington avenue and other public streets of the city, singing, shouting, and playing tambourines, etc., to attract an unusual crowd thereon, and expecting to be arrested therefor. And thereupon the arrest of the appellant and a number of his male and female associates was made, and appellant and two other males (the females in consideration of their sex having been released from arrest) were tried and convicted in the police court, from which appeals were taken to the district court, where convictions were again had; and appellant, Isaac Anderson, brings his case here. He attacks the validity of the ordinance, and claims it is void, because (1) it is not within the power of the city council to enact such an ordinance; (2) the ordinance undertakes to make that criminal which in its nature is not criminal; (3) because it gives to the officers named, not the right to regulate, but to prohibit, street parades; (4) because it is unreasonable and oppressive, and does not act upon all classes alike, and is not fair, general, and impartial. It is also objected to because it had not been legally published; and because it contains more than one subject; and because it attempts to revise and amend another ordinance without referring to the same, and repealing it, in violation of § 746, Comp. Laws of 1881, p. 165.

As to the power of the council to pass such an ordinance,

our attention has been called to §§ 31, 50, 67, ch. 19, Comp. Laws of 1885. These in general terms authorize the council to enact such ordinances as are not repugnant to the constitution and laws of the state, and such as it shall deem expedient for the good government of the city, the preservation of peace and good order, and to restrain and prohibit noises, disturbances and disorderly assemblies in any street, house or place in the city. This is about the extent of the legislative grant of authority. The ordinance in question makes it unlawful for any persons, society, association or organization to parade any public street, avenue or alley of the city of Wellington, shouting, singing, or beating drums or tambourines, or playing upon any musical instrument designed, intended or calculated to attract or call together an unusual crowd of people upon such street, avenue or alley, without having first obtained in writing the consent of the mayor of said city, authorizing such parades. Funerals, fire companies, regularly organized companies of state militia and United States troops are excepted from the operation of the ordinance. Persons convicted of the violation of the ordinance may be fined in any sum not less than $5 nor more than $100, or punished by imprisonment not exceeding ninety days, or by both fine and imprisonment.

The power to pass a city ordinance must be vested in the governing body of the city by the legislature in express terms, or be necessarily or fairly implied in and incident to the powers expressly granted, and must be essential to the declared purposes of the corporation — not simply convenient, but indispensable. (Dillon, Mun. Corp., 3d ed., p. 115, and authorrities cited.) Any fair and reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. Powers encroaching upon the rights of the public or of individuals must be plainly and literally conferred by the charter. (*Breninger v. Belvidere*, 44 N. J. L. 350; Horr & Bemis, Munic. Police Ord., p. 18.)

In addition to this, the ordinance must be reasonable; not

inconsistent with the laws of the state; not repugnant to fundamental rights; must not be oppressive; must not be partial or unfair; must not make special or unwarranted discriminations, and must not contravene common right. These restrictions upon the power of the common councils of cities in this country have been frequently imposed, and almost universally recognized in all the courts of last resort that have expressed opinions upon the subject. The object of this ordinance, and the danger apprehended and to be avoided by its enactment and enforcement as expressed by its terms is, to prevent the calling together of a large or unusual crowd of people on any of the streets, avenues or alleys of the city of Wellington. Then the question is this: Is a street parade with music or singing legally objectionable in itself, or does it threaten the public peace or the good order of the community? There are other questions made in the briefs of counsel for appellant, but we shall consider only the general legal characteristics of the ordinance; for if it is not legal, the other questions go with it; and if it is, they are probably not important enough to justify reversal in this particular case. This ordinance prevents any number of the people of the state attached to one of the several political parties from marching together, with their party banners and inspiring music, up and down the principal streets, without the written consent of some municipal officer. The Masonic and Odd Fellows' organizations must first obtain consent before their charitable steps desecrate the sacred streets. Even the Sunday-school children cannot assemble at some central point in the city and keep step to the music of the band as they march to the grove, without permission first had and obtained. The Grand Army of the Republic must be preceded in its march by the written consent of his honor the mayor, or march without drums or fife, shouts or songs. It prevents a public address upon any subject being made on the streets. It prevents an unusual congregation of people on the streets under any circumstances without permission. The ordinance is framed on the theory that an unusual crowd or

congregation of people upon one of the public streets of a city is either of itself a disturbance of the public peace, or that it threatens the good order of the community. A crowd of people is one of the most ordinary incidents of every-day life in any city of considerable size in this country. A fire, a runaway, an unusual sight, collects a crowd as if by magic; and it is not a fair estimate of the character and habits of the American people to assume that the public peace is threatened when numbers of them congregate. We do not believe that the legislative grant of power to the city council as enumer-

Street parades, power to prevent, doubted.

ated in the sections above cited can be so construed as to authorize the city council to take from the people of a city and the surrounding country a privilege exercised by them in every locality throughout the land, to form their processions and parade the streets with banners, music, songs, and shouts. It is an abridgment of the rights of the people. It represses associated effort and action. It discourages united effort to attract public attention, and challenge public examination and criticism of the associated purposes. It discourages unity of feeling and expression on great public questions, economic, religious, and political. It practically destroys these great public demonstrations that are the most natural product of common aims and kindred purposes. The power to pass such an ordinance should be clear and controlling before it can be upheld, and take away from the people the privilege that they have exercised ever since the organization of the government. Public parades of this character are not unlawful in their intent, purpose and result; they are not *mala in se*. If they are to be *mala prohibita*, it ought to be by some general law, and not by local regulation.

"All charters and laws and ordinances must be capable of construction, and must be construed in accordance with constitutional principles, and in harmony with the general laws of the land; and any ordinance that violates any of the recognized rights and privileges, or the principles of legal and equitable rights, is necessarily void so far as it does, and void

entirely if it cannot be applied according to its terms." (*Frazee's Case*, Sup. Ct. of Mich., 1886; 30 N. W. Rep. 72.)

We conclude that the city charter grants only such power to the common council of the city of Wellington as will enable the city to preserve the public peace and maintain good order, subject to the limitations and conditions required by the rights of the people themselves as secured by the general principles of the law, as exemplified by their universal action since the organization of the government and the common occurrences in every city in the Union on every public or festive occasion. The right of the people in this state by organization to coöperate in a common effort, and by a public demonstration or parade to influence public opinion and impress their strength upon the public mind, and to march upon the public streets of the cities of the state with the usual accompaniments of bands, banners, transparencies, glee clubs, and all the accessories of public meetings, is too firmly established and has been too often exercised to be now questioned, or to be made the basis of an ordinance forbidding the same, predicated on the false assumption that they are dangerous to the peace of the public or inimical to the good order of the city. Of course such parades are subject to the operation of the laws upon the subject of riots, mobs, unlawful assemblies, and nuisances, whenever they become so; and city ordinances and statutes of the state already afford ample protection to the public, and ready processes to prohibit, repress and arrest offenders whenever the original purposes of such parades are perverted and they become criminal in character and action.

"It is quite possible that some things have a greater tendency to produce danger and disorder in the cities than in smaller towns or in rural places. This may justify reasonable precautionary measures, but nothing further; and no inference can extend beyond the fair scope of powers granted for such a purpose, and no grant of absolute discretion to suppress lawful action altogether can be granted at all. That which is an actual nuisance can be suppressed just so far as it is noxious, and its noxious character is the test of its wrongfulness. There may be substances, like some explosives, which are

dangerous in cities under all circumstances, and made danger-
ous by city conditions; but most dangerous things are not so
different in cities as to require more than increased or qualified
safeguards; and to suppress things not absolutely dangerous
as an easy way of getting rid of the trouble of regulating them,
is not a process tolerated under free institutions. Regulation,
and not prohibition, unless under clear authority of the char-
ter, and in cases where it is not oppressive, is the extent of city
power." (*Frazee's Case*, supra.)

The title to the ordinance seems to indicate that the object
in view was the regulation of street parades; and to regulate
means to control, to govern, to subject to certain restrictions
or restraints growing out of a condition of affairs or a state
of public opinion, some threatened invasion of public or pri-
vate rights, or some unusual commotion. The word employed
necessarily implies that street parades are lawful, but that cer-
tain restrictions may be necessary to preserve the public from
harm. It might be proper on account of the peculiar condi-
tion of affairs in a city, that street parades should be confined
to certain streets, or should be conducted within certain hours
of the day, or should be forbidden in the night-time, or that
the police department should have some previous notice, or
that there should be other reasonable regulations respecting
them, justified by such a condition that it would be apparent
that regulation, and not prohibition, was the object of the ordi-
nance; because the power cannot be extended to prohibition,
for the very essence of regulation is the existence of some-
thing to be regulated. (*Sweet v. Wabash*, 41 Ind. 7; *McCowill
v. Jersey City*, 39 N. J. L. 38; *Brouron v. Oberlin*, 41 Ohio St.
476; *Austin v. Murray*, 16 Pick. 12; *Duckwell v. New Albany*,
25 Ind. 283; *Shallcross v. Jeffersonville*, 26 id. 193.)

It is not a reasonable regulation to vest the power arbitra-
rily in the mayor to grant or refuse permission to any associa-
tion of persons combined for legal and meritorious purposes to
parade the streets with music. The use of musical instru-
ments on such occasions is not specially objectionable; songs
and shouts, cheers and the waving of banners, have always
been considered as demonstration of approval, and not as tend-

ing to create disturbances or provoke breaches of the peace. All these are the usual accompaniments of public demonstrations in every civilized country, and there is nothing in their use on all ordinary occasions of this character *to justify* absolute prohibition. It is not justified by the common experience, and our attention has not been called to any local disturbance that would seem to create a necessity for such an unusual attempt at regulation.

All by-laws made to regulate parades must fix the conditions upon which all persons or associations can move upon the public streets, expressly and intelligently; such conditions operating on all of the same class alike, and being reasonable in their requirements, and not oppressive in their operation, and must not give the power of permitting or restraining processions to an unregulated official discretion, and thus allow an officer to prevent those with whom he does not agree on controverted questions from calling public attention to the principles of their party or the objects of their organization in one of the most effectual methods known to associated effort.

For all these reasons, and because of all these results and consequences, we doubt the power of the city council of Wellington to pass the ordinance in question; and because it is not free from fair and reasonable doubt, resolve the question against the city and pronounce the ordinance illegal and void.

Street parade; city ordinance, void.

It is recommended that the judgment of the court below be reversed, and the case remanded for further proceedings in accordance with this opinion.

By the Court: It is so ordered.

All the Justices concurring.