The State ex rel. Garrabad vs. Dering.

———

THE STATE EX REL. GARRABAD VS. DERING.

*March 21 — April 11, 1893.*

*Constitutional law: Municipal ordinances: Street parades.*

| 84 | 585 |
| 111 | 436 |

| 84 | 585 |
| s19 LRA 858n |
| 20 LRA 223 |
| 27 LRA 529n |
| 30 LRA 712n |
| 37 LRA 642n |
| 39 LRA 674n |

A municipal ordinance, making it unlawful for any persons or organization to parade on certain streets, shouting, singing, or beating drums or tambourines, or playing on any other instruments, without first having obtained written permission from the mayor, but excepting from its provisions funerals, fire companies, state militia, and political parties having a state organization, is void because of the unreasonable and unjust discrimination which it makes and which it gives the mayor arbitrary power to make, in violation of art. XIV, Amend. Const. of U. S.

CERTIORARI to a Court Commissioner of *Columbia* County.

This is a proceeding by *certiorari* to review the decision of *C. L. Dering*, court commissioner of Columbia county, in the matter of his refusal to discharge the petitioner, *Joseph Garrabad*, from custody, and remanding him to the imprisonment of which he complains. It appears from the return of the sheriff of Columbia county to the writ of *habeas corpus* issued by the commissioner, that on the 27th day of February, 1893, the petitioner was placed in his custody, and was held therein, under and by virtue of an execution or so-called "commitment," issued by V. Helman, a justice of the peace of the city of Portage in said county, reciting that the city of Portage had recovered a judgment before said justice against the petitioner for the sum of $5, together with $13.85 costs of suit, for the violation of an ordinance of said city, to wit, No. 124, entitled "An ordinance to regulate street parades and insure public safety," and commanding the sheriff or any constable of the county to levy the same on the goods and chattels of the said petitioner except such as the law exempts, and in default thereof to take his body and him convey and deliver to the keeper of the common jail of Columbia county, to be there kept in custody for the term of twenty days, unless said judgment with costs was sooner paid or he should be discharged by due course of law.

The ordinance in question provides that "it shall be unlawful for any person or persons, society, association, or organization, under whatsoever name, to march or parade over or upon" certain streets (therein named) in the city of Portage, "shouting, singing, or beating drums or tambourines, or playing upon any other musical instrument or instruments, for the purpose of advertising or attracting the attention of the public, or to the disturbance of the public peace or quiet, without first having obtained a permission to so march or parade, signed by the mayor of said

The State ex rel. Garrabad vs. Dering.

city.   In case of illness or absence of the mayor or other
officer hereby designated of the city, such permission may
be granted and signed by the president of the council, city
clerk, or marshal, in the order named: provided, that this
section shall not apply to funerals, fire companies, nor reg-
ularly organized companies of the state militia: and pro-
vided, further, that permission to march or parade shall at
no time be refused to any political party having a regular
state organization.   Any person violating any of the pro-
visions of this ordinance shall, upon conviction thereof, be
fined in a sum not less than two dollars or more than ten
dollars."   The second section provided that the marshal
should accompany such person or persons receiving permis-
sion while upon the portion of the streets described, to
preserve order, warn the owners of horses upon said por-
tions of said streets, and to carefully preserve the public
safety; and when such permission is given by any officer
other than the marshal, that he should forthwith notify the
marshal of the granting of the same.

The sheriff further returned that "the central part of the
business portion of the city of Portage is contained within
the limits defined in the ordinance, and the streets therein
referred to were narrow, and cross and enter each other at
various angles, and there was a great deal of traffic over
the same, and that the petitioner had been duly and law-
fully convicted of a wilful violation of said ordinance upon
trial duly and legally had."

The petitioner demurred to the return, and the commis-
sioner overruled the demurrer and ordered that he be
remanded to the custody of the sheriff, to be confined in
the county jail of said county according to the terms of
said execution.

For the relator there was a brief by *Rogers & Hall*, and
oral argument by *F. W. Hall*.   They cited *State ex rel. Cart-
mill v. Rochester*, 44 Hun, 166; *Trimble v. Bucyrus*, 21 Alb.

L. J. 176; *Matter of Frazee*, 63 Mich. 399; *Chicago v. Trotter*, 136 Ill. 430; *Tugman v. Chicago*, 78 id. 405; *Robison v. Miner*, 68 Mich. 565; *People v. Armstrong*, 73 id. 293; Dillon, Mun. Corp. sec. 322; *Anderson v. Wellington*, 40 Kan. 173.

*W. S. Stroud*, for the respondent, cited, as cases sustaining similar ordinances or laws, *Comm. v. Plaisted*, 148 Mass. 375; *Roderick v. Whitson*, 4 N. Y. Supp. 112; *Comm. v. McCafferty*, 145 Mass. 384; *State v. White*, 64 N. H. 48

PINNEY, J. The city charter of the city of Portage (Laws of 1882, ch. 132, sec. 31) confers upon the common council of the city power to pass ordinances and by-laws on certain subjects, under and by virtue of the delegation of the police powers of the state to the common council and city officers for the government of the city and the preservation of order and public safety. In respect to such ordinances or by-laws it has long been the established doctrine that they must be reasonable, not inconsistent with the charter nor with any statute nor with the general principles of the common law of the land, particularly those having relation to the liberty of the subject or the rights of private property. Dillon, Mun. Corp. § 319, and cases cited in notes. The particular objections urged to the validity of the ordinance in question fall within the scope of the fourteenth amendment to the constitution of the United States, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny *to any person within its jurisdiction the equal protection of the laws.*" These provisions apply equally to all persons within the territorial jurisdiction of the United States, without regard to any differences of color or nationality; and the equal protection of the laws is a pledge, it is held, " of the protection of equal laws." *Yick Wo v. Hopkins*, 118 U. S. 369.

It is objected that the ordinance is void · on its face, by reason of its operating unequally and creating an unjust and illegal discrimination, not only (1) by the express terms of the ordinance itself, but (2) it is so framed as to punish the petitioner for what is permitted to others as lawful, without any distinction of circumstances, whereby an unjust and illegal discrimination occurs in its execution, and which, though not made by the ordinance in express terms, is made possible by it; (3) in that it vests in the mayor, or other officers of the city named in it, power to arbitrarily deny persons and other societies or organizations the right secured by it to others to march and parade on the streets named. The general subject and scope of the ordinance is marching or parading by " any person or persons, society, association, or organization " over the streets named, " shouting, singing, or beating drums or tambourines, or playing upon any musical instrument or instruments, for the purpose of advertising or attracting the attention of the public, or to the disturbance of the public peace or quiet," without having obtained permission as prescribed in the ordinance. It provides, among other things, that the ordinance shall not apply to *fire companies,* nor to regularly organized companies of the *state militia,* and that permission to march or parade shall at no time be refused to *any political party* having a regular state organization. The permission, it will be seen, is required absolutely to be granted to political parties having a regular state organization, so they are practically excepted out of the ordinance. Whether permission shall be granted to any other society, civic, religious, or otherwise, depends not upon the character of the organization, or upon the particular circumstances of the case, but upon the arbitrary discretion of the mayor or other officers named in the ordinance, acting in his absence. It is therefore argued that, as between different persons, societies, associations, or organizations, the ordinance oper-

ates unequally and creates unjust and illegal discriminations by its express terms, and makes such discriminations not only possible but necessary in its administration, and therefore that the ordinance is void upon common-law principles, as heretofore recognized and administered in the courts of the country.

The rights of persons, societies, and organizations to parade and have processions on the streets with music, banners, songs, and shouting, is a well-established right, and, indeed, the ordinance upon its face recognizes to a certain extent the legality of such processions and parades, and provides for permitting them, in the discretion of the mayor, in all cases except those named, and as to those the right is practically secured. The ordinance, as framed, and as it is to be executed under the arbitrary discretion of the mayor or other officer, is clearly an abridgment of the rights of the people; and in many cases it practically prevents those public demonstrations that are the most natural product of common aims and kindred purposes. " It discourages united effort to attract public attention and challenge public examination and criticism of the associated purposes." *Anderson v. Wellington*, 40 Kan. 173, contains a careful discussion and examination of a similar ordinance, which was there held to be void as contravening common right. In *In re Frazee*, 63 Mich. 396, after a full discussion by CAMPBELL, C. J., a similar ordinance was also held void, and that it is not in the power of the legislature to deprive any of the people of the enjoyment of equal privileges under the law, or to give cities any tyrannical powers; that charters, laws, and regulations, to be valid, must be capable of construction, and must be construed, in conformity to constitutional principles and in harmony with the general laws of the land; and that any by-law which violates any of the recognized principles of lawful and equal rights is necessarily void so far as it does so, and void entirely if it

cannot be reasonably applied according to its terms; and no grant of absolute discretion to suppress lawful action can be sustained at all; that it is a fundamental condition of all liberty, and necessary to civil society, that men must exercise their rights in harmony with and yield to such restrictions as are necessary to produce peace and good order; and it is not competent to make any exceptions for or against the so-called "Salvation Army" because of its theories. concerning practical work; that in law it has the same right, and is subject to the same restrictions, in its public demonstrations, as any secular body or society which uses similar means for drawing attention or creating interest. Hence the by-law there in question, because it suppressed what was in general perfectly lawful, and left the power of permitting or restraining processions and their courses to an unlawful official discretion, was held void; and that any regulation, to be valid, must be by permanent legal provisions, operating generally and impartially.

The return of the sheriff utterly fails to show of what specific offense the petitioner was convicted; that is to say, in what particular respect he violated the ordinance. We may infer, however, for the purpose of argument and illustration, from the fact that the petition for the writ addressed to this court states that the petitioner is a member of the Salvation Army, that he was convicted of parading the streets in that capacity. It cannot be maintained that any person or persons or society have any right for religious purposes or as religious bodies to use the streets for purposes of public parade because the purpose in view is purely religious and not secular, but they certainly have the same right to equal protection of the laws as secular organizations. The objections urged against this ordinance are, we think, fatal to any conviction which might take place under it, by reason of its unreasonable and unjust discriminations and of the arbitrary power conferred upon

the mayor or other officer of the city to make others in its administration and execution; so that it is impossible to sustain the conviction in any aspect in which the question may be viewed.

A careful examination of the decisions in various states, and the considerations upon which they are founded, is not material to the determination of the case, for the whole subject is governed and controlled by the provisions of the fourteenth amendment to the constitution of the United States, already referred to. In construing and applying this amendment, the supreme court of the United States have said in *Barbier v. Connolly*, 113 U. S. 27, that it "undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that *equal* protection and security should be given *to all under like circumstances in the enjoyment of their personal and civil rights;* that all persons should be equally entitled to pursue their happiness, and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition. . . . Class legislation discriminating *against some and favoring others* is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it *affects alike all persons similarly situated,* is not within the amendment." The entire subject underwent careful examination in the case of *Yick Wo v. Hopkins*, 118 U. S. 356, where the subject of city ordinances and the principles regulating their validity were considered. The objections to the validity of the ordinances in that

case were, in substance, the same that are urged in this, and the ordinances in question were held void. The objections urged in the case of *Baltimore v. Radecke*, 49 Md. 217, were also in substance the same, for the ordinance in that case upon its face committed to the unrestrained will of a single public officer the power to determine the rights of parties under it, when there was nothing in the ordinance to guide or control his action, and it was held void because "it lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented," and that " when we remember that action or non-action may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void." The doctrine of this case was approved in *Yick Wo v. Hopkins*, 118 U. S. 356, and the court in the latter case observed: " We are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford of unequal and unjust discrimination in their administration;" and proceeded to show that in the case there presented the ordinances in actual operation established "an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they were applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppress-

ive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the fourteenth amendment to the constitution of the United States;" and the court added: "Though the law itself be fair on its face and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

Nearly all the processions, parades, etc., that ordinarily occur are excepted from the ordinance in question, followed by a provision that permission to march or parade shall at no time "be refused to any *political* party having a regular state organization." It is difficult to see how this can be considered municipal legislation, dictated by a fair and equal mind, which takes care to protect and provide for the parades and processions with trumpets, drums, banners, and all the accompaniments of political turnouts and processions, and at the same time provides, in effect, that the Salvation Army, or a Sunday school, or a temperance organization with music, banners, and devices, or a lodge of Odd Fellows or Masons, shall not in like manner parade or march in procession on the streets named without getting permission of the mayor, and that it shall rest within the arbitrary, uncontrolled discretion of this officer whether they shall have it at all. The ordinance resembles more nearly the means and instrumentalities frequently resorted to in practicing against and upon persons, societies, and organizations a petty tyranny, the result of prejudice, bigotry, and intolerance, than any fair or legitimate provision in the exercise of the police power of the state to protect the public peace and safety. It is entirely un-American and

in conflict with the principles of our institutions and all modern ideas of civil liberty. It is susceptible of being applied to offensive and improper uses, made subversive of the rights of private citizens, and it interferes with and abridges their privileges and immunities, and denies them the equal protection of the laws in the exercise and enjoyment of their undoubted rights. In the exercise of the police power the common council may, in its discretion, regulate the exercise of such rights in a reasonable manner, but cannot suppress them, directly or indirectly, by attempting to commit the power of doing so to the mayor or any other officer. The discretion with which the council is vested is a legal discretion, to be exercised within the limits of the law, and not a discretion to transcend it or to confer upon any city officer an arbitrary authority, making him in its exercise a petty tyrant. Such ordinances or regulations, to be valid, must have an equal and uniform application to all persons, societies, or organizations similarly circumstanced, and not be susceptible of unjust discriminations, which may be arbitrarily practiced to the hurt, prejudice, or annoyance of any. An ordinance which expressly secures to political parties having state organizations the absolute right to street parades and processions, with all their usual accompaniments, and denies it to the societies and other like organizations already mentioned, except by permission of the mayor, who may arbitrarily refuse it, is not valid, and offends against all well-established ideas of civil and religious liberty. The people do not hold rights as important and well settled as the right to assemble and have public parades and processions with music and banners and shouting and songs, in support of any laudable or lawful cause, subject to the power of any public officer to interdict or prevent them. Our government is "a government of laws and not of men," and these principles, well established by the courts, by the fourteenth

amendment to the constitution of the United States, have become a part of the supreme law of the land, so that no officer, body, or lawful authority, can " deny to any person the equal protection of the laws." It is plain that the ordinance in question is illegal and void, and for this reason the order of the commissioner must be reversed.

*By the Court.*— The order of the court commissioner is reversed, and the petitioner ordered discharged.

A note as to the validity of ordinances relating to street parades is published with this case in 19 L. R. A. 858.— REP.