## USE OF STREETS FOR PUBLIC PARADE AND ASSEMBLY.

Court of Appeals for Hamilton County.

STATE OF OHIO, ON THE RELATION OF HERBERT S. BIGELOW, V.
FREDERICK S. SPIEGEL, MAYOR OF THE CITY OF
CINCINNATI.

Decided, June 24, 1915.

*Control of the Use of the Streets—Ordinance so Providing Must be Construed in a Reasonable Manner—Disturbance and Nuisance Only to be Avoided—Streets Not Reserved Exclusively for Public Travel—Limitation of the Right of Assembly an Encroachment on Constitutional Rights—Issuance of Permit for Use of the Streets for Public Speaking Compelled by Mandamus.*

1. An ordinance pertaining to street processions and assembly in the streets must be regarded as merely regulatory, its chief purpose being to advise the city authorities when, where, and in what manner it is proposed to assemble or parade; and the action of the authorities in granting or refusing permits for such use of the streets must be reasonable, and not arbitrary or governed by whim or caprice.

2. Where, in an action for a writ of mandamus to compel the mayor of a city to grant a permit for public meetings on the streets, evidence is adduced sustaining the allegations of the petition that the action of the mayor in refusing the permit was not based upon an exercise of discretion but was arbitrary, whimsical and actuated by bias and prejudice toward the relator or the cause advocated by him; and where the evidence furnishes *no* basis for fear of disturbance, or public inconvenience from the holding of such meetings and shows that permits for like meetings are freely and frequently granted to other persons and organizations, such evidence, uncontradicted, furnishes ground for the issuance of the writ.

3. It is always incumbent upon respondent in a mandamus action to appear in obedience to the command of the court and to show cause why a peremptory writ should not issue. And, where he fails to appear, without explanation or reason for his absence given, such absence on his part lends added proof that the complaint of relator is true and that no reasonable ground exists for denying to relator the desired permit.

*Thos. L. Michie* and *Ed. F. Alexander,* for relator.

*Walter M. Schoenle* and *Saul Zielonka,* City Solicitors, for respondent.

Jones (E. H.), J.; Jones (Oliver B.), J., and Gorman, J., concur.

The petition in this case alleges that the relator, Herbert S. Bigelow, is and has been for a long time pastor of the People's Church, a religious society within the city of Cincinnati; that the membership of said church authorized and requested the relator as pastor to arrange for open air meetings during the summer months; that on or about the 15th day of June, 1915, relator applied to the defendant as mayor of the city of Cincinnati for a permit authorizing him to hold certain street corner meetings as follows:

Sunday, June 20th, 7:30 P. M., Fifth and Race, northeast corner, near middle of block; Monday, June 21st, 7:30 P. M., Brighton; Tuesday, June 22nd, 7:30 P. M., Knowlton's Corner; Wednesday, June 23d, 7:30 P. M., Madisonville; Thursday, June 24th, 7:30 P. M., Peebles Corner; Saturday, June 26th, 7:30 P. M., Findlay Market; that relator stated in his said application that said meetings were to be held for the purpose of discussing the application of the ethical teachings of the Bible to modern social problems, and that the discussion would be under the general subject, "The Bible and the Labor Problem." The relator further requested from the defendant a blanket permit for any further meetings of similar character which he might desire to hold in the city during the summer.

Then the petition of relator sets out that in response to the above request the respondent Frederick S. Spiegel, Mayor of the city of Cincinnati, wrote to him as follows, refusing his request:

"City of Cincinnati,
"Frederick S. Spiegel, Mayor.
"George F. Crawford, Secretary.

"June 18, 1915.

"My Dear Sir: I have given careful consideration to the letter, addressed by Mr. Carl Brannin, executive secretary of the People's Church, to the chief of police, reading as follows:

"'The People's Church is planning to hold street-corner meetings this summer for the purpose of discussing the application of the ethical teachings of the Bible to our modern social problems. These discussions will be under the general subject, "The Bible and the Labor Problem," a different subject being used each week.

" 'We would like to begin these meetings Sunday night, June 20th, at 7:30 P. M., at Fifth and Race, N. E. corner, near the middle of the block, and continue during the week according to the following schedule: Monday, June 21, 7:30 P. M., Brighton; Tuesday, June 22, 7:30 P. M., Knowlton's Corner; Wednesday, June 23, 7:30 P. M., Madisonville; Thursday, June 24, 7:30 P. M., Peebles Corner; Friday, June 25, 7:30 P. M., Norwood;* Saturday, June 26, 7:30 P. M., Findlay Market.

" 'A schedule of the meetings planned for the following week will be sent you at the proper time, unless you will accede to our request for a blanket permit, which would make same unnecessary.'

"I have also carefully considered your letter, in which you inform me that the safety director and the chief of police have verbally refused your request, but that, under the ordinance, the request should have been addressed to the mayor, which is correct, and that, therefore, you desire that I should pass upon the matter.

"Section 3714 of the General Code of Ohio, provides that municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law, and that council shall have the care, supervision and control over them.

"In accordance with this power, council has passed an ordinance, of which Section 677 (page 282, Code of Ordinances) provides that all street assemblages, with certain exceptions, under which your request does not fall, are forbidden, unless a permit therefor shall have previously been obtained from the mayor.

"The letter from Mr. Brannin states that the People's Church is planning to hold street-corner meetings this summer, for the purpose of discussing the application of the ethical teachings of the Bible to our modern social problems.

"No such request to use the public streets of our city has ever been received by me from any church or religious denomination. The streets are made for the purpose of traffic, open to vehicles and pedestrians, and it is the duty of the city authorities to keep the same free and clear from gatherings, impeding public travel.

"Since the law does not contemplate the granting of permits for the use of our streets for a series of public lectures, either religious or economic in their nature, for which churches and halls have been built, I must respectfully decline to grant these permits.

*Not in Cincinnati; therefore no permit required.

"A copy of this letter has been sent to Mr. Carl Brannin, executive secretary of the People's Church.

"Very respectfully,

"(Signed) FREDERICK S. SPIEGEL,

"*Mayor*.

"MR. HERBERT S. BIGELOW, Leader,

"The People's Church,

"Odd Fellows Temple,

"City."

The petition then contains a copy of Section 677 of the ordinances of said city, as follows:

"Section 677. *Street Parades.*—That all street parades, processions and street assemblages occupying, assembling, or marching upon any street, lane, alley, highway, wharf or public square of the city of Cincinnati, excepting posts of the Grand Army of the Republic, the National Guard of the state of Ohio, funeral processions and the fire and police forces of the city of Cincinnati, are forbidden, unless a permit therefor shall have previously been obtained from the mayor. Written notice of the object, time and desired place or route of such procession, parade or assemblage, and the character, purpose and names of the officers of the same, shall be given by the chief officers thereof, together with the permit from the mayor not less than twenty-four hours previous to its forming, assembling or marching, to the chief of police, and to protect the business interests of the citizens and to prevent delay in travel, and to preserve peace and good order of the city, the said chief of police shall designate to such procession, parade or assemblage what and how much of the streets, lanes, alleys, highways, wharves or public squares it may occupy; and it shall be the duty of said chief of police to furnish such escort as may be necessary to protect persons and property and maintain public peace and good order of the city."

The petition also states that upon the receipt of said written request it became the duty of said defendant in the exercise of sound discretion to grant a permit to the relator for the holding of said meetings; that the refusal of said defendant to grant said permit is an abuse of the discretion vested in him by law, and is arbitrary and capricious; that the reasons assigned for said refusal are trivial and insufficient to warrant the refusal of the permit and amount to a complete denial of

the right of assemblage and free speech on the public streets and squares, except at the whim of the defendant or his successors in office; that other permits have been granted for said meetings by the defendant and his subordinates, to the Salvation Army, Gospel Wagon, Republican, Democratic and Socialist political parties, and to other organizations for various purposes, religious, political, commemorative and otherwise.

The relator then prays that a writ of mandamus issue to Frederick S. Spiegel, mayor of the city of Cincinnati, commanding him to grant to the relator herein a permit to hold the meetings aforesaid.

Upon the presentation of the matter to this court and upon an application for an alternative writ of mandamus, the same was allowed, returnable on June 23d. At that time the answer of the respondent had been filed, admitting the allegations of the petition as to the relation of relator to the People's Church; admitting that the letter incorporated in the petition is a correct copy of the letter mailed to relator refusing to grant the application; admitting that the ordinance in question is a valid ordinance and that he, the mayor, has granted permits in accordance with the terms of the same. Respondent then denies each and every other allegation of the petition in mandamus, and prays that the petition of relator be dismissed at relator's costs.

Upon these pleadings and the issues made therein this case was tried, and on account of the nature of the case and the dates fixed for the proposed meetings the cause was advanced and proceeded to trial upon its merits.

The command of the alternative writ issued was that said Frederick S. Spiegel, mayor of the city of Cincinnati, "do immediately upon the service of this writ grant the permits required by law to the relator herein for the holding of street meetings as requested by said relator," "or that at the time and place of the return of this writ he show cause why he has not done so."

At the trial respondent appeared by counsel only, and the only expression we have from the mayor throwing light upon his refusal to grant the permit is his letter to Mr. Bigelow—a complete copy of which appears above. Mr. John R. Holmes,

director of public safety under appointment by the mayor, and Mr. William Copelan, chief of police, appeared in court and testified. Their evidence shows that prior to the formal application in writing by Mr. Bigelow a request had been made by one Carl Brannin, who is an officer of the People's Church, which request was addressed to said Copelan and by him referred to said John R. Holmes, his superior. This request was refused by these officials, and then it was that Mr. Bigelow made the written request in full conformity with the terms of the ordinance in question. The request by Mr. Brannin to the subordinate officers named was made in compliance with a custom, or a working rule, as it was termed by witnesses, which prevails in the matter of granting these permits, under which rule scarcely any of the applications are ever brought to the attention of the mayor. A very large percentage of them are acted upon by the chief of police and only in rare instances are they referred to the director of public safety, and much more rarely to the mayor.

Messrs. Bigelow, Brannin, Holmes and Copelan were the only witnesses called. Their evidence establishes without contradiction or dispute that Mr. Bigelow for over twenty years has been the pastor of the People's Church; that during that time he has spoken frequently upon political, social, economic and religious questions in public buildings and on the streets of the city of Cincinnati and elsewhere. The evidence of the officers named shows that he usually draws large crowds, and it is admitted that at no time has any disturbance occurred at any of his meetings or has anything been done or said calculated to create any disturbance or to provoke a breach of the peace or disorder of any kind. While there is no evidence to that effect, it is a matter of history that Mr. Bigelow was selected by the electors of Hamilton county as one of their delegates to the late state constitutional convention, and that he was chosen by the assembled delegates as presiding officer of that body. His selection to that position was manifestly not on account of his being a minister of the Gospel, but rather on account of his known interest in and lifelong study of public questions social and political. So that Mr. Bigelow not only has the presumption that he intended no wrong, in his favor,

but in addition thereto has the uncontradicted evidence of good citizenship and a knowledge of and ability to discuss from his viewpoint the subject or subjects indicated in his application.

These things it was the duty of the relator to establish in this case, and the duty has been fully met.

It then became the duty of the mayor under the express command of the writ, to show cause why the permit should not be issued. It was not necessary for him to show a cause that would appeal to or be sufficient in the minds of this or any other court; all that was necessary for him to do was to meet the issue tendered in the petition and denied by him in the answer, namely, that his action in refusing the permit was not based upon an exercise of sound discretion, but that the same was arbitrary and capricious.

The allegation of the petition that permits had been granted to the Salvation Army, Gospel Wagon, Republican, Democratic and Socialist political parties, and to other organizations for various purposes, religious, political, commemorative and otherwise, though denied in the answer, is admitted afterwards by the city officials upon the stand, and fully established by the evidence in this case.

The evidence in fact shows that permits are granted to the Salvation Army, Gospel Wagon and different church organizations of the city without investigation or formality, and practically as a matter of course upon application, and that such permits are readily granted by the chief of police without being called to the attention of the mayor or any other superior officer. We think then that from the nature of the People's Church, under whose auspices the proposed addresses are to be given and from the evidence as to the character and standing of Mr. Bigelow, relator has established the facts in support of his petition, which raise a presumption or reasonably give rise to the suspicion that the action of the mayor in refusing the permit was an arbitrary one and not the result of the exercise of that sound discretion which the ordinance in order to be valid must contemplate that he should exercise.

In this connection we might say that no attack is made upon the ordinance by relator or his counsel. On the contrary it is admitted by the pleadings that the ordinance is a valid en-

actment. But counsel for relator make such admission upon the condition that the language of the ordinance is to be given a reasonable construction and one that makes it incumbent upon the mayor to exercise discretion and not to act arbitrarily or unreasonably.

We deem it unnecessary to cite any of the numerous authorities which might be cited to show that this ordinance if construed so as to vest in the mayor an arbitrary power to grant or refuse permits at will, governed only by whim or caprice, would be absolutely void. There is nothing either in the language of the ordinance or the manifest reason for its enactment to indicate that such power was intended by council to rest with the mayor. On the other hand, the ordinance contemplates a reasonable exercise on the part of the mayor of the power given him. It must be regarded as merely regulatory, its chief purpose being not to limit or restrict the right of citizens to parade or assemble on the streets of the city, but rather to advise the city authorities where, when and in what manner such things are to take place and be held. It is only when so interpreted and understood that the ordinance can be deemed a valid law.

As already stated, the letter written by Mayor Spiegel to Mr. Bigelow is the only word from him explaining the refusal to grant a permit. This letter was not offered in evidence by either side, but was referred to in argument and will be considered insofar as it has any bearing upon the issues in this case.

The first alleged ground of refusal contained in the letter of the mayor is near the end thereof, and is couched in the following words: "No such request to use the public streets of our city has ever been received by me from any church or religious denomination." This sentence certainly can not mean that no request was ever made to use the public streets for public meetings, but the words "such request" must have reference to the subject of the lectures, which is given in the preceding paragraph of the letter, as follows: "For the purpose of discussing the application of the ethical teachings of the Bible to our modern social problems." To refuse the application upon the ground that that particular subject, or that a subject described in that precise language was never before

embodied in a like request we do not regard as a sound reason, or as indicating the exercise of a sound discretion on the part of the mayor.

Immediately following the above language we find the following statement in the letter of the mayor:

"The streets are made for the purpose of traffic, open to vehicles and pedestrians, and it is the duty of the city authorities to keep the same free and clear from gatherings, impeding public travel."

With reference to this alleged reason we may say that we doubt very much the power of the mayor to carry out such a policy and to prevent absolutely all gatherings upon the streets. But it is admitted by the evidence in this case that no such intention is entertained nor any such policy followed by the city authorities. On the contrary, the evidence shows that permits are frequently granted for public meetings in the streets, and that, too, during seasons of the year when no political campaign is on. The nature of the organizations which enjoy these privileges has already been given and bears close relation to that of the organization under whose auspices and for whose benefit this permit was requested.

Next, the mayor contends:

"Since the law does not contemplate the granting of permits for the use of our streets for a series of public lectures, either religious or economic in their nature, for which churches and halls have been built, I must respectfully decline to grant these permits."

We are not sure of the mayor's premise from which the conclusion in this last paragraph is drawn. We have made careful examination of the authorities upon the question, both those cited by counsel and others which have come to our attention, and we are not prepared to say with the mayor that the law does not contemplate the granting of permits for the use of our streets for a series of public lectures either religious or economic in their nature. In this connection we will cite a few authorities only.

In the case of *Anderson* v. *Wellington*, 40 Kansas, 173, the question involved the constitutionality of a city ordinance which

made it a misdemeanor punishable with fine or imprisonment or both, for any organization to parade in any public streeet shouting, singing or beating drums or tambourines, etc. The court held such ordinance void, as it was not a reasonable regulation to vest the power arbitrarily in the mayor to grant or refuse the permission to parade the streets for lawful or meritorious purposes.

In *Chicago* v. *Trotter*, 136 Ill., 430, the court said:

"Parades and processions upon the streets of the city, are not necessarily productive · of danger and disorder so as to render them *per se* the creators of public disturbances, nor are they necessarily nuisances. There is no authority, therefore, in the municipal corporation to suppress such demonstrations of all kinds, at all times and under all circumstances. Citizens have the constitutional right of pursuing their own happiness, and on suitable occasions and for lawful purposes, and in a peaceable manner they may gather together in street parades and processions if they so desire," etc.

In the case of *Rich* v. *City of Naperville*, 42 Ill. App., 222, the court in the syllabus of that case held:

"1.   Ordinances to be valid must be reasonable; they must not be oppressive; they must be fair and impartial, and not so framed as to allow their enforcement to rest in official discretion.

"2.   Where public parades and demonstrations whether religious or political, do not threaten the public peace, or substantially interfere with the rights of others, every measure repressing them, whether by legislative enactment or municipal ordinance, is an encroachment upon fundamental and constitutional rights.

"3.   Upon proceedings against members of the Salvation Army, for the breach of an ordinance prohibiting the parading of streets by any organization without first securing the permission of·the city council, this court holds the same to be void, upon the ground of its being unreasonable, oppressive and so framed as to allow its enforcement to rest in unregulated official discretion."

And in the opinion of the same case the court uses this language:

"Ever since the landing of the Pilgrims from the Mayflower the right to assemble and worship according to the dictates

of one's conscience, and the right to parade in a peaceable manner and for a lawful purpose, have been fostered and regarded as among the fundamental rights of a free people. The spirit of our free institutions allows great latitude in public parades and demonstrations, whether religious or political, and if they do not threaten the public peace, or substantially interfere with the rights of others, every measure repressing them, whether by legislative enactment, or municipal ordinance, is an encroachment upon fundamental and constitutional rights.''

The Michigan Supreme Court, in the case of *Andrew Frazee*, 63 Mich., 396, on page 404 uses the following language:

''It has been customary from time immemorial, in all free countries, and in most civilized countries, for people who are assembled for common purposes to parade together, by day or reasonable hours at night, with banners and other paraphernalia, and with music of various kinds. These processions for political, religious and social demonstrations are resorted to for the express purpose of keeping up unity of feeling and enthusiasm, and frequently to produce some effect on the public mind by the spectacle of union and numbers. They are a natural product and exponent of common aims, and valuable factors in furthering them. They are only found to any appreciable extent in places having collected inhabitants, for spectators are generally as important as members. They are among the incidental conditions of city life, and are as much to be expected, on suitable occasions, as any other public meetings, and not necessarily any more dangerous.''

And on page 405:

''It is only when political, religious, social, or other demonstrations create public disturbances, or operate as nuisances, or create or manifestly threaten some tangible public or private mischief, that the law interferes.''

Space forbids further citations, but innumerable quotations could be made from eminent authorities to the same effect as those above given.

We therefore can not concur with the judgment of the mayor that ''the law does not contemplate the granting of permits for the use of our streets,'' etc. On the contrary we believe that the law does contemplate such permits, and that they should

be granted with great freedom and with little formality, and refused only in cases where disorder and lawlessness might be well considered the natural result of the permit sought, or unless other good cause be shown why they should not be granted. The granting of permission should never depend upon the attitude of the one in whom the granting power is vested to ward the applicant or the cause advocated by him.

A fair and interesting discussion of the principles involved in this case will be found on page 858 or the 19th Volume of the Lawyers' Reports Annotated.

We, therefore, are of the opinion that the allegations of the petition, that there was no sound discretion exercised and that the refusal was made arbitrarily, have been proven by the evidence in this case, which upon this point stands uncontradicted. Not a word has come from the respondent during the trial of this case by way of explanation. We think that we have shown that the alleged reasons contained in his letter to Mr. Bigelow are not sufficient. They are inconsistent with the conduct of the mayor in granting permits, and in no sense, either severally or collectively, constitute any ground for a denial of the natural and ever zealously guarded right of free speech and the right to assemble.

As already stated, Mr. John R. Holmes, director of public safety, appeared and testified in this case on behalf of the respondent. Under our municipal code he occupies a position of much responsibility, is an appointee of the mayor and in the nature of things is in close contact with the executive officer of the city, being at the head of the police and fire departments. The matter of granting this permit was referred to Mr. Holmes, as before stated, by Chief Copelan. The only reason given at the time, by Mr. Holmes, for his refusal to grant the permit, was that it seemed to him to be an "I. W. W." proposition. He was questioned about this on the stand, and was asked whether or not he believed Mr. Bigelow to be a member of the I. W. W. His answer was that he had no reason to disbelieve it. His evidence and demeanor on the stand plainly showed him to be very strongly prejudiced against Mr. Bigelow for some reason. He admitted that although he had been a resident of the city of Cincinnati during all the years that Mr. Bigelow has been so

conspicuous as a preacher and public speaker, he had never heard his voice until he heard it in this court room. The evidence in the case plainly shows that the action of Mr. Holmes, therefore, in declining to issue the permit was purely arbitrary and prompted by ill-will towards Mr. Bigelow or some principle or cause which he advocates, or both. Mr. Holmes was fair about this, and made no attempt to conceal his feeling. Whether or not this feeling is shared by the mayor we do not know; but Mr. Holmes was brought here on behalf of the mayor, and we think it only fair to assue that the reasons given by him, or rather the want of reasons shown by him for refusing the permit, must be to same extent imputed to the mayor.

There being no valid or sound reason shown why the permit was refused, and the respondent having failed to show any proper reason for said refusal, the prayer of the petition will be granted and a peremptory writ issued in accordance therewith.