LERNER, Appellant, vs. CITY OF DELAVAN, Respondent.

*November 12—December 9, 1930.*

For the appellant there was a brief by *Fiedler, Garrigan & Grimm* of Beloit, and oral argument by *E. C. Fiedler.*

For the respondent there was a brief by *Ray Bowers,* city attorney of Delavan, and *Simmons, Walker, Wratten & Sporer* of Racine of counsel, and oral argument by *Mr. John B. Simmons* and *Mr. Bowers.*

WICKHEM, J.   The ordinance in question is attacked as invalid for the reason that it furnishes no standard by which

the council may exercise its discretion in granting permits; that consequently it vests the council with a wholly arbitrary power to grant or deny or revoke permits, and that it puts it within the power of the council to destroy what is conceded to be a legitimate business.

It is clear from the authorities that dealers in junk and second-hand articles are subject to control and regulation for several reasons: first, there is a strong likelihood that, innocently or otherwise, such dealers will frequently receive stolen goods; second, they are apt to gather together quantities of inflammable matter in combustible buildings; and third, they frequently have in their possession clothing or other articles infected with disease. They are consequently subject to reasonable regulation, either by statute or ordinance. The authorities to this effect are overwhelming, and are collected in 30 A. L. R. 1427.

At the time the ordinance in question was passed the general city charter law contained specific authority to the common council to "license and regulate . . . keepers or proprietors of junk shops and places for the sale and purchase of second-hand goods, wares and merchandise." Sub. (46), sec. 925—52, Stats. 1911. Sub. (5), sec. 62.11, Stats., which is a part of the general city charter law, provides:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

There can exist no doubt that the city of Delavan had the power to pass and enforce a reasonable ordinance regulating plaintiff's business. While in some cases it might make a difference whether the power of the common council had its source in specific authority given it by statute, or in a general welfare clause, it is not necessary to consider this question in the view that the court takes of the ordinance.

Does the ordinance in question vest in the common council a purely arbitrary power to grant and to revoke licenses for the carrying on of the junk business? It is concluded that it does not. The factors which the cases recognize as the proper bases for regulating junk yards are taken into account in the ordinance. It will be noticed that the ordinance requires the person applying for the permit to give his name, the place where the business is to be carried on, and an enumeration of the articles and merchandise to be handled therein. It is fairly to be implied that there was no intention to vest an arbitrary power in the council, but that the ordinance gives to the council the power, and imposes upon it the duty, to consider and exercise its discretion with reference to those factors in the junk business which have made it a proper subject for special legislation. These factors are: the type of person who proposes to engage in the business; the character of goods that he proposes to handle, and the location of the business.

An examination of the ordinance involved in *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42, discloses that it was even less definite as to the standards by which a right to a permit was to be determined than was the ordinance in this case. In the *Ruplinger Case* it was said:

"True, the language of the ordinance is quite general in that it provides that 'all applications for license under this ordinance shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for

the good order of the city.' Manifestly, if by any fair construction of that language all that was left to the mayor was the exercise of mere administrative functions in a reasonable manner, then counsel's point is not well taken. There is no principle better established than that a law may be made, complete in itself, and be left to some officer or tribunal to determine the facts requisite to application of the enactment to a given case. . . .

"The ordinance dealt with the keeping of junk shops as a legitimate business. Therefore it is not to be thought that there was any purpose to clothe the mayor with power to permit or suppress such business. The idea embodied in the ordinance, by reasonable if not necessary inference, is that any suitable person, considering all things bearing on the question, for the operation of the junk business, shall, if he desires, upon compliance with the ordinance, have a license to run such business. Manifestly, the question of suitability must depend upon the existence or non-existence of facts, and the facts must vary somewhat according to character, temperament, age, history, and many other things. The idea that the purpose of the ordinance was to confer upon the mayor power to act arbitrarily so as to suppress the business of keeping junk shops instead of regulating it, or to pass favorably upon one candidate for a license and unfavorably upon another under the same or similar circumstances, . . . is repellent to the whole scheme embodied in the ordinance and must be rejected."

To the same effect are the cases of *Milwaukee v. Rissling,* 184 Wis. 517, 199 N. W. 61, and *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125. That the ordinance does not prescribe standards in greater detail than it does, is not fatal to its validity. In ordinances of this sort the council is faced with the practical difficulty of defining with precision in advance the conditions under which permits shall be granted. In *State v. Taubert,* 126 Minn. 371, 148 N. W. 281, it is said:

"The varying circumstances and conditions to be taken into account cannot be accurately anticipated in advance, and

uniform and unvarying restrictions previously prescribed are liable to prove inadequate or inapplicable."

The appellant cites the case of *State ex rel. Garrabad v. Dering,* 84 Wis. 585, 54 N. W. 1104, as sustaining his position. In this case the ordinance in question made it unlawful for any person or persons, society, association, or organization to march or parade on certain streets in the city of Portage without first having obtained permission signed by the mayor of said city. The ordinance excepted from its operation funerals, fire companies, regularly organized companies of the state militia, and political parties having a regular state organization. It was held that the ordinance was discriminatory and void. The court said:

"Whether permission shall be granted to any other society, civic, religious, or otherwise, depends not upon the character of the organization, or upon the particular circumstances of the case, but upon the arbitrary discretion of the mayor or other officers named in the ordinance, acting in his absence."

We think this ordinance is sufficiently distinguished from the one in the instant case, in that the latter is construed not to vest an arbitrary power in the common council, and that it does not seek to discriminate between persons similarly situated. *Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012, also cited by appellant, was analyzed and distinguished in the *Ruplinger Case, supra.* In this case the ordinance in question read as follows:

"All saloons in said village shall be closed at 11 o'clock p. m. each day and remain closed until 5 o'clock on the following morning, unless by special permission of the president."

In the *Ruplinger Case* it was said:

"This case differs widely, on its facts, from *Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012. The distinction was there recognized between that administrative power

which has to do with executing law and the legislative authority which has to do with making law. Authority to determine, arbitrarily, whether a saloon shall be closed or not was said to be legislative and discriminatory. Here authority was not conferred on the mayor to say whether the business of keeping junk shops should be permitted or not, and, if permitted, to discriminate between persons under the same or similar circumstances. The licensing of such business was provided for, as before indicated, in all its details, leaving only to the judgment of the mayor as regards suitability of candidates."

Appellant also cites the leading case of *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064. In this case an ordinance made it unlawful for any person to engage in the laundry business in San Francisco without first having obtained the consent of the board of supervisors, unless the laundry be located in a building constructed of brick or stone. The court in this case uses language which seems to indicate that it regarded the ordinance as intending to confer an arbitrary power rather than a legal discretion. However, it is held in this case that the administration of the ordinance was directed exclusively against Chinese laundrymen, and that "whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth amendment to the constitution of the United States." The case has quite generally been treated by writers, and even by the court itself, as being authority for the proposition that the court will restrain an arbitrary exercise of authority under such an ordinance, rather than that the ordinance is void. *Lieberman v. Van De Carr,* 199 U. S. 552, 26 Sup. Ct. 144; 9 Harvard Law

Review, 483; 7 Harvard Law Review, 374; 4 Harvard Law Review, 236. Even if the case is to be regarded as authority for the proposition that the ordinance is void, and this is concededly arguable, it is distinguishable from the present ordinance for the same reason that the case of *State ex rel. Garrabad v. Dering, supra,* is distinguishable.

It is considered that the ordinance in question is valid; that it confers upon the common council only a legal discretion and not an arbitrary power; and that this discretion is to be limited to a consideration of those factors in the junk business which render it peculiarly subject to regulation.

The next question raised is whether the council acted arbitrarily in denying a permit to plaintiff. The act of the council in denying the permit should not be disturbed or set aside except for clear and manifest abuse of discretion. It is quite clear in this case that the council acted not upon the unsuitability of the plaintiff as the proprietor of such a business, but upon the unsuitability of the place at which such business was conducted, in view of its nearness to the residences of others. We cannot say that the council in this case clearly abused its discretion. While there is evidence that two of the aldermen did not believe that a junk yard should be maintained within the city limits, there is not sufficient evidence that the action of the council was based on such an opinion, and there is sufficient evidence in the record, in our opinion, to justify the council, in its discretion, in denying to plaintiff a permit to conduct a junk yard in the location involved because of its offensive and dangerous character in that location.

*By the Court.*—Judgment affirmed.