CITY OF JUNEAU, Respondent, vs. BADGER CO-OPERATIVE OIL COMPANY, Appéllant.

*January 14—May 17, 1938.*

622

The cause was submitted for the appellant on the brief of *William B. Clifford* and *Eugene A. Clifford,* both of Juneau, and for the respondent on that of *Paul A. Hemmy, Jr.,* and *George A. Hartman,* both of Juneau.

FOWLER, J.   As appears from the preceding statement of facts, the city of Juneau brought an action to enjoin the defendant from constructing and maintaining a bulk oil and service station for the sale of gasoline and other petroleum products on the ground that the storage tanks and filling stations constituted a nuisance under its Ordinances No. 146 and No. 147.   While other points are discussed in the briefs, we find it necessary only to consider whether, (1) the ordinances under which the city brought the action are valid, and (2) whether if the ordinances are invalid the city can bring the action.

(1) In determining as to the power of the city to enact the ordinances we will consider the ordinances separately.

Ordinance No. 146 is merely a general prohibition against maintaining and erecting a gasoline or oil bulk or filling station within the city limits, without first obtaining a permit from the common council.

The respondent claims this ordinance is valid under the decision of this court in *Lerner v. Delavan,* 203 Wis. 32, 233 N. W. 608. While the city under the *Lerner Case* no doubt has power, under the power conferred by sec. 62.11 (5), Stats., "to act for the . . . safety, and welfare of the public, and may carry out its powers by license, regulation [and] suppression" to enact an ordinance for licensing the erection and maintenance of structures for the sale of gasoline and other petroleum products, the question is not whether the city has power to license, but whether the ordinance is a lawful exercise of that power. The *Lerner Case,* properly considered, refutes rather than upholds the validity of the instant ordinance. The opinion in the *Lerner Case* starts out with the inquiry whether the ordinance there involved furnished a standard to guide the council in the exercise of its discretion to grant or withhold a permit, or vested the council with a wholly arbitrary power in that respect, and put it in its power to destroy a legitimate business. The opinion after stating, page 35, the things which from time immemorial have been considered as justifying the regulation and licensing of the junk business, holds, page 36, that by providing that an applicant for a license shall state his name, the place where the business is to be carried on, and the kind of articles and merchandise to be handled therein, the ordinance required the council to consider the factors which have made the business a proper subject for special legislation—the factors being the type of person who proposed to carry on the business, the character of the goods to be handled, and the location of the business. The instant ordinance indicates no factors which the council must con-

sider. Two factors plainly for consideration in determining whether a license shall be granted for the erection and maintenance of a bulk oil and service station are the structure of the plant and its location. Neither of these nor anything else by the instant ordinance is suggested as a standard by which the council is to be guided.

The case of *Milwaukee v. Ruplinger*, 155 Wis. 391, 395, 145 N. W. 42, comes nearer to justification of the instant ordinance. It involves the issuing of a license by the mayor of the city. It says nothing about location of the business, character of the applicant, or the articles to be handled. But it does indicate the thing that is to guide the mayor in the granting of the license. He was to be guided by what to him might "seem best for the good order of the city." Here there is no standard whatever either provided or indicated. The ordinance purports to authorize the exercise of purely arbitrary power, and is therefore void.

License ordinances usually confer upon some officer the power to grant the license, and such ordinances as have been attacked in the courts as invalid have in most cases been of this kind. However, when the legislative body of the city assumes to grant a license itself, the ordinance provision for the granting of it must prescribe the conditions that must be met by the licensee, appropriate to the particular business with which it deals, applicable alike to all applicants. It is said in 2 McQuillin, Mun. Corp. p. 726, § 764, that:

"If an ordinance, therefore, prescribes no rule for the conduct of a particular business with which it undertakes to deal, applicable alike to all who may bring themselves within its terms, but confers upon the council power to issue a certain class of permits without defining the exercise of the power in that relation but which leaves the power absolute it will be held unreasonable."

The text cites in its support *Richmond v. Model Steam Laundry*, 111 Va. 758, 69 S. E. 932; *Lynch v. Town of*

*North View,* 73 W. Va. 609, 81 S. E. 833, 52 L. R. A. (N. S.) 1038; *Monticello v. Bates,* 169 Ky. 258, 183 S. W. 555; *Boyd v. Board of Councilmen,* 117 Ky. 199, 77 S. W. 669; *Town of Lagrange v. Overstreet,* 141 Ky. 43, 132 S. W. 169. To the same effect are *Bizzell v. Board of Aldermen,* 192 N. C. 348, 135 S. E. 50; *Montgomery v. West,* 149 Ala. 311, 42 So. 1000, 9 L. R. A. (N. S.) 659; *State v. Tenant,* 110 N. C. 609, 14 S. E. 387; *Mayor & Council of Hagerstown v. Baltimore & O. R. Co.* 107 Md. 178, 68 Atl. 490; *City of Richmond v. Dudley,* 129 Ind. 112, 28 N. E. 312; *Cicero Lumber Co. v. Town of Cicero,* 176 Ill. 9, 51 N. E. 758; *City of Newton v. Belger,* 143 Mass. 598, 10 N. E. 464; *City of Elkhart v. Murray,* 165 Ind. 304, 75 N. E. 593; *Bessonies v. City of Indianapolis,* 71 Ind. 189; *In re Frazee,* 63 Mich. 396, 30 N. W. 72; *Bills v. City of Goshen,* 117 Ind. 221, 20 N. E. 115; *May v. People,* 1 Colo. App. 157, 27 Pac. 1010; *City of Plymouth v. Schultheis,* 135 Ind. 339, 35 N. E. 12; *State v. Mahner,* 43 La. Ann. 496, 9 So. 480; *State v. Dubarry,* 44 La. Ann. 1117, 11 So. 718.

There are decisions *contra: Marquis v. City of Waterloo,* 210 Iowa, 439, 228 N. W. 870; *State v. Morrow,* 175 Minn. 386, 221 N. W. 423; *State v. Dirnberger,* 152 Minn. 44, 187 N. W. 972; *Matter of Larkin Co. v. Schwab,* 242 N. Y. 330, 151 N. E. 637, 638; *State v. Rosenstein,* 148 Minn. 127, 181 N. W. 107; *Fischer v. St. Louis,* 194 U. S. 361, 24 Sup. Ct. 673, 48 L. Ed. 1018.

The *Fischer Case, supra,* has been repudiated by the Missouri court. The ordinance therein involved was upheld in 167 Mo. 654, 663, 67 S. W. 872, 64 L. R. A. 679. It is said in this opinion that:

"We are asked to declare this ordinance void, . . . because, forsooth, the assembly may at some time discriminate against one man and favor another. We cannot and shall not indulge any such presumption against the . . . munici-

pal assembly, but shall, as was said in *St. Louis v. Howard*, 119 Mo. 50, assume that the municipal assembly, before granting permission, will inquire and determine whether the place and the neighborhood is a proper one in which to allow a dairy to be maintained and will act impartially."

The ordinance involved prohibited the maintenance of a dairy within the city limits without first procuring permission from the municipal assembly. The supreme court of the United States upheld it as not contrary to due process or the equality provision of the Fourteenth amendment, and said that the court was "bound to assume that the discrimination [of denying to one person and granting to another] is made in the interest of the public, and upon conditions applying to the health and comfort of the neighborhood." Whether this statement was based upon the like assumption by the Missouri court is not expressly stated, but had the Missouri court considered that the ordinance granted arbitrary power it would seem that the construction of it would have been upheld by the federal court. The interpretation of the meaning and import of the statute in that respect was for the Missouri court to make, and the federal court would not have interfered with its construction. In *Hays v. Poplar Bluff*, 263 Mo. 516, 536, 173 S. W. 676, L. R. A. 1915 D, 595, an ordinance was involved providing that no person could construct a wooden building within the fire limits of the city without procuring authorization therefor by resolution of the common council. The ordinance was held void because, among other reasons stated,—

"it violates the fundamental principle inherent in our constitutional system that when a municipal corporation seeks by ordinance to restrict for the public good the rights of the individual otherwise incident to the ownership of property, it must do so by a rule applicable to all alike under the same circumstances, and cannot make his enjoyment of his own depend upon the arbitrary will or caprice of the municipal legislature."

The opinion states that the *Fischer Case* is "inconsistent with the conclusion at which we have now arrived," and that so far as it "conflicts with the *Russell Case* [*St. Louis v. Russell*, 116 Mo. 248, 22 S. W. 470, 20 L. R. A. 721] it is disapproved, and the doctrine of the latter, as well as of *St. Louis v. Dreisoerner* [243 Mo. 217, 223, 147 S. W. 998, 41 L. R. A. (N. S.) 177] and *St. Louis v. Atlantic Quarry Co.* [244 Mo. 479, 148 S. W. 948], is approved." In *City of St. Louis v. Polar Wave Ice & Fuel Co.* 317 Mo. 907, 296 S. W. 993, an ordinance providing that no stable having accommodation for more than ten horses should be maintained "without permission first having been obtained from the board of public service," was held void because the permission was "made to rest in the discretion of the board of public service, uncontrolled, and unmeasured by reference to any test or standard provided by the ordinance." It is said in the opinion in reference to the *Fischer Case, supra*:

"The decision sustained the validity of the ordinance, in part upon indulgence in the presumption that the city council would not either withhold, or grant permission arbitrarily, or capriciously. In *Hays v. Poplar Bluff* [263 Mo. 516, 173 S. W. 676, L. R. A. 1915 D, 595, an ordinance establishing fire limits within which buildings composed of combustible materials cannot be erected except by permit of mayor and council] the fact that caprice might enter into the exercise of the power granted, was given large weight, and the doctrine announced in the *Fischer Case* was disapproved."

The decisions of the *Hays* and *Polar Wave Ice Co. Cases, supra,* were made long subsequent to that of the United States supreme court in the *Fischer Case,* and must be taken as the considered position of the Missouri court. It is said in the last decision of the Missouri court bearing upon the question, *Lux v. Milwaukee Mechanics Ins. Co.* 322 Mo. 342, 15 S. W. (2d) 343, 345:

"The general rule is that any ordinance which attempts to clothe an administrative officer with arbitrary discretion

without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer and for that reason is unconstitutional. *Hays v. Poplar Bluff*, 263 Mo. 516; *Ex parte Cavanaugh v. Gerk*, 313 Mo. 1. c. 381; *City of Shreveport v. Herndon*, 105 So. 244, and numerous cases cited; *People v. Sholem*, 294 Ill. 204, 128 N. E. 377. . . .

"The exceptions to the general rule are in situations and circumstances where necessity would require the vesting of discretion in the officer charged with the enforcement of an ordinance, as where it would be either impracticable or impossible to fix a definite rule or standard, or where the discretion vested in the officer relates to the enforcement of a police regulation requiring prompt exercise of judgment."

The statement last quoted is made in a case involving power delegated to a city officer, rather than in reference to a power exercised by the council, but the reason of it applies to the latter situation as well as to the former.

This court has expressly held that municipal ordinances that by their terms confer arbitrary power to grant permits are void. *State ex rel. Garrabad v. Dering*, 84 Wis. 585, 54 N. W. 1104; *Little Chute v. Van Camp*, 136 Wis. 526, 117 N. W. 1012. We consider the instant ordinance void as purporting to confer such power, and adhere to the plain implication of the *Lerner Case, supra*, that when a municipal legislative body, as a means of regulating a legitimate business, by ordinance assumes the function of granting licenses to persons conducting such business, it must prescribe a standard to govern the granting of the license which shall be appropriate to the regulation of that business and applicable alike to all applicants for the license. This does not apply, of course, to ordinances that exact a tax from every one who comes within its terms, as from every owner of a dog, or that exact a fee from every one who is conducting a stated business to cover the cost of inspection or the like.

Cursory examination of subsection (1), Ordinance No. 147, given in full in the margin,[1] shows that it is subject to the same constitutional objections as the ordinance provision that was recently held void in *State ex rel. Ford Hopkins Co. v. Watertown*, 226 Wis. 215, 276 N. W. 311. The ordinance there involved purported to regulate restau-

---

[1] "Ordinance No. 147.

"The Common Council of the City of Juneau do ordain as follows:
"Section one.
"Gasoline Storage Restrictions.

"(1) No tank, receptacle or other container, used or intended to be used for the storage of gasoline, naphtha, or other petroleum products and having a storage capacity in excess of fifty gallons shall hereafter be erected or constructed or moved underground or upon any premises within the corporate limits of the city of Juneau not now· so used for the storage of gasoline, naphtha or other petroleum products in such capacity, except as hereinafter expressly provided.

"(2) Any person, firm or corporation intending to erect or construct or move underground or upon any premises not now so used any tank, receptacle, or other container, used or intended to be used for the storage capacity in the excess of fifty gallons and not to exceed three thousand gallons, including all storage for filling station purposes, shall first submit plans and specifications for the construction and installation of all such tanks, receptacles or other containers, used or to be used for that purpose, and for all buildings constructed, located, or to be constructed or located within one hundred feet thereof, to the common council and obtain its permit in writing to erect or construct or move the same underground or upon the site therein designated for the purpose. Such permit shall be granted only where the plans and specifications shall conform to the recommendations of the National Board of Fire Underwriters.

"(3) No tank,· receptacle or container used or intended to be used for the storage of gasoline, kerosene, naphtha or other petroleum products and having a storage capacity in excess of fifty· gallons, shall hereafter be erected or constructed or· moved underground or upon any premises within the corporate limits of the city of Juneau, when such tax [tank?] receptacle or other container either above ground or underground, shall 'be within two hundred feet of any building.

"(4) Any tank, receptacle or other container, used or intended to be· used· for· the storage ·of. gasoline,. naphtha,· or other petroleum products, or any structure or building within one.ʰhundred feet thereof, hereafter constructed or moved underground or upon any such premises ·that shall not conform to the 'provisions of this section shall be deemed a nuisance, and upon information it shall be

rants and to provide for the licensing thereof. A section of the ordinance provided that all persons desiring to operate in connection with any other business a restaurant to commence business after the date the ordinance became operative by its terms, must segregate and separate the restaurant business from such other business by constructing a solid partition wall without any openings of any kind therein from floor to ceiling, while restaurants conducted in connection with other business that were in operation at the time of the enactment of the ordinance were not required to maintain such partitions. This discrimination was held to invalidate the ordinance, because the distinction upon which the classification was based was not germane to the purpose of the provision of the ordinance, which was to protect the public health. If the public health required it in one instance it did in the other, and required it just as much.

So here. Subsection (1) of the ordinance provides that no tank or container used or intended to be used for storage

---

the duty of the mayor, after notice to the owner, builder, occupant, or person in possession of any such storage tank, receptacle or other container and buildings in connection therewith, to abate the same to require the chief of police, by an order in writing, to raze such property to the ground.

"The expenses thereof shall be reported by the chief of police to the common council, and the same may be collected from the owner to [of?] the building by suit.

"Penalty.

"(5) Any owner, builder, or person who shall violate any of the provisions of this section shall upon conviction thereof, be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars and the costs of the prosecution, and in default of the payment of such fine and costs such persons shall be confined in the common jail of Dodge county for a period of not less than ten days, and not more than thirty days. Each day's continuance of the nuisance, after notice to abate the same, shall be considered and construed as a separate offense, punishable under this provision.

"Section two.

"This ordinance shall take effect and be in force from and after its passage and publication."

of gasoline having a storage capacity in excess of fifty gallons "shall *hereafter*" be constructed or moved underground within the city upon any premises "not now so used," except as hereinafter provided. The fatal infirmity is in exempting premises "not now so used." If the structures mentioned are erected on premises *not now* used for storage of gasoline the provision of the ordinance must be complied with, but if the same structures are erected on premises now used for storage of gasoline the provisions need not be complied with. The ostensible and only lawful purpose of the provisions of the ordinance is to furnish protection from fire and explosions. But if public safety requires compliance with the provisions when structures for storage of gasoline are erected on premises *not now used* for such storage, it also requires such compliance where such structures are erected on premises *now used* for storage.

Passing to subsection (2) of the ordinance, the same fatal infirmity exists. If one is about to construct or move underground any tank or container of gasoline holding in excess of fifty gallons, including filling stations, on premises *not* now used for storage of gasoline, he shall first submit plans to the city council, which shall meet certain stated specifications, and procure a permit from the council for such *construction* or *moving* and for all buildings to be constructed or located within one hundred feet thereof, but if the premises where he wishes to construct or move the tank or containers or construct a building are *now* used for storage, he need not submit plans or procure a license. Manifestly, the reason for submitting plans and procuring a license when buildings are to be erected on or near premises *now used* for storage of gasoline, or for constructing or moving tanks or containers thereon, are precisely the same as when the premises are *not now* so used, and to require them in the latter case and not in the former is discrimination.

It is also to be noted that subsection (2) does not apply to tanks containing *over* three thousand gallons. Thus one could construct a three thousand five hundred or four-thousand-gallon tank without complying with the provisions of the subsection. The same reasons for compliance apply to erection of tanks of capacity in excess of three thousand gallons as to tanks below it, and apply with even greater force. There is obviously no basis for the classification in this respect.

Passing to subsection (3), that subsection is void for another reason. It provides that no tank or container holding in excess of fifty gallons shall be erected or moved underground on any premises within the city limits within two hundred feet of any building. This is an unreasonable requirement. The ordinary city block is a square about three hundred feet long on each side. If such a city block had only one building on it located near the center of any of its sides, no gasoline container of any kind could be placed or sunk in the ground anywhere on the block. This would require an ordinary filling station to have its storage tank over two hundred feet from its service building. Also, the ordinance covers all petroleum products. Fuel oil is such a product. No one could put a tank of fifty-one-gallon capacity for storage of fuel oil for his residence within two hundred feet of his residence or of any other building. The two-hundred-feet provision is manifestly unreasonable, and ordinances must be reasonable.

Subsection (4) declares a nuisance any tank or container used or intended to be used for storage of gasoline, regardless of its capacity, and any building within one hundred feet thereof hereafter constructed or moved underground upon any such premises, that shall not conform to the provisions of the ordinance above stated. This subsection is nugatory if for no other reason because the previous subsections are invalid and there is nothing to which it applies.

The ordinances being void, violation of them affords no basis for an injunction against the defendant for erecting his plant in disregard of them.

(2) The circuit court found as fact that the storage of gasoline by the defendant in the bulk station "is a menace to the safety and the security of the citizens" of the plaintiff city, and as conclusion of law ruled that the storage of gasoline by the defendant within the corporate limits of the city "constitutes a nuisance *per se*" and entitles the plaintiff to an injunction restraining the defendant from "operating or maintaining" any bulk gasoline tanks anywhere within the city limits.

It is perhaps not clear whether the court intended to base its findings and conclusion on the ordinances or on the facts independent of the ordinance. The finding of fact above stated would indicate that the instant plant was considered a nuisance because of its location, that is, as a common-law nuisance, but the conclusion of law that storing in bulk by the defendant anywhere within the city limits is a nuisance *per se* indicates that the court was relying on the ordinances.

But assuming that the court found that the bulk-station tanks constitute a common-law nuisance, this does not support action by the city. It is not shown that the city has any property affected by the defendant's tanks and no other special injury or interest of the city is shown. The findings are that the citizens of the city, not the city itself, are menaced. The city acted on the assumption that the storage tanks constituted a public nuisance and commenced the action to abate it. But a city has no power to bring action to abate a public nuisance. Sec. 280.02, Stats., provides that such actions must be "prosecuted in the name of the state, either by the attorney general upon his own information, or upon the relation of a private individual having first obtained leave therefor from the court." As leave of the

court was not obtained and as the city is not "a private individual" anyhow, and no special injury to the city was proved, no case in favor of the city was established, and the complaint must be dismissed. See *Madison v. Wisowaty,* 211 Wis. 23, 247 N. W. 572.

*By the Court.*—The judgment of the circuit court is reversed, and the record remanded with directions to dismiss the complaint.