STATE EX REL. HUMBLE OIL & REFINING COMPANY and others, Respondents, v. WAHNER, Town Clerk, and others, Appellants. [Case No. 116.]

SAME, Respondents, v. DENISSEN, Building Inspector, Appellant. [Case No. 117.]

*September 2—September 29, 1964.*

For the appellants there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* and oral argument by *David J. Condon,* all of Green Bay.

For the respondents there was a brief by *Rix, Kuelthau & Kuelthau* of Milwaukee, attorneys, and *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, of counsel, and oral argument by *John C. Whitney* and *Robert E. Kuelthau.*

WILKIE, J. The first question presented on this appeal is whether the zoning ordinance in effect at the time of the Humble petitions is valid.

In 1947, the town board of Allouez had the power to zone pursuant to authority of sec. 62.23 (7), Stats. This ordinance, like any zoning ordinance, is presumed to be valid and will be set aside only if its invalidity clearly appears.[1]

---

[1] *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. (2d) 770; *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683; *State ex rel. Newman v. Pagels* (1933), 212 Wis. 475, 250 N. W. 430.

The ordinance permitted filling stations in a commercial zone only if approved by the zoning board of appeals. When an ordinance vests discretionary power in administrative officials it must prescribe standards to guide their action.[2] There are none set out in sec. V. The only guidelines contained in the ordinance are found in that portion of sec. XV, which provides:

"In interpreting and applying the provisions of this ordinance they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare. . . ."

The crucial question is whether these provisions save the ordinance from being declared unconstitutional for failing to prescribe adequate standards to govern the board in its disposition of a request to build a filling station in a designated commercial zone.

Several Wisconsin cases have involved licensing or zoning ordinances that faced similar challenges. In *Lerner v. Delavan*[3] an ordinance was held valid which required that a permit to run a junkyard be obtained from the common council but, in addition, specified that the applications for permits had to contain the applicant's name, information as to the location and description of the premises, an explanation as to the type of business envisioned, and an enumeration of the materials to be handled. The court found that these provisions set forth sufficient standards to guide the council in evaluating applications for new junkyards.

In *Wadhams Oil Co. v. Delavan*[4] the court upheld an ordinance that prohibited the operation of a gasoline station

---

[2] *Hobart v. Collier* (1958), 3 Wis. (2d) 182, 87 N. W. (2d) 868; *Juneau v. Badger Co-operative Oil Co.* (1938), 227 Wis. 620, 279 N. W. 666; 62 C. J. S., Municipal Corporations, p. 434, sec. 226.
[3] (1930), 203 Wis. 32, 233 N. W. 608.
[4] (1932), 208 Wis. 578, 243 N. W. 224.

within 165 feet of the main street of the city without city council consent. Applicants were not required to submit any information in regard to the proposed station. The court found that the ordinance imposed upon the council the duty to exercise sound discretion in regard to one factor, traffic, which has made gas stations a proper subject for regulation.

In *Smith v. Brookfield,*[5] another zoning ordinance, which called for the submission of the "location and plan of operation" to the board before the board would allow a particular use in an area, was sustained. The preamble declared that the ordinance was adopted—

". . . in order to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare, *all in accordance with a comprehensive zoning plan; . . ."*[6]

The court found that the statement of purpose announced in the preamble and the required approval of the "location and plan of operation" were sufficient norms to guide the board.

All three of these cases are distinguishable. The ordinance in *Lerner* incorporated several requirements as to what each junkyard application should contain, thus setting forth some vital guides to direct the council in its consideration of these requests. No such requirements were contained in the Allouez ordinance. The ordinance in *Wadhams,* by specifying the 165-foot distance from the corner within which no filling station was to be constructed without council approval, impliedly commanded the council to consider the one factor of traffic in reviewing requests for permits.

---

[5] *Supra,* footnote 1.
[6] 272 Wis. at page 3, 74 N. W. (2d) at page 771.

The Allouez ordinance is completely silent as to any such factor to be considered. The preamble language as to basic purpose which was held to supply sufficient guidelines to the zoning board in *Smith* is much broader and more specific than the purpose language quoted from sec. XV of the Allouez ordinance. Furthermore, in *Smith* the board was required to approve the "location and plan of operation" embracing the requested use.

Appellants also rely on *Milwaukee v. Ruplinger* [7] wherein an ordinance was upheld which provided for the submission of all applications for junk-shop licenses to the mayor "who may grant or refuse to grant such license as to him may seem best for the good order of the city." This standard was deemed adequate.

Such a standard as what may be deemed "best for the good order of the city" is not sufficient for the exercise of the wide discretion that may be vested in a zoning board to grant building permits for particular uses such as for filling stations under the Allouez ordinance. Neither is the requirement of minimum standards met by that part of the section on "interpretation, purpose, and conflict" of the Allouez ordinance that provides that "the provisions of this ordinance . . . shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare." This is a listing of the factors that justify a zoning ordinance, but they are too general and too remotely related to what the board is required to do under sec. V (A) (3) to supply the necessary guidelines for administrative action. In *Lerner, Wadhams Oil,* and *Smith, supra,* each ordinance contained guidelines that pinpointed some of the considerations that were to govern the exercise of discretionary power either by the common council or the zoning board.

---

[7] (1914), 155 Wis. 391, 145 N. W. 42.

In *Juneau v. Badger Co-operative Oil,*[8] a zoning ordinance was ruled invalid where it simply forbade the construction of a gasoline or bulk oil station within the city limits without first procuring the consent of the common council. The ordinance contained no standards and was held fatally defective for this reason.

Respondents rely on a Michigan case,[9] which is virtually on all fours with the present facts. The ordinance in question provided for a "business" district but prohibited gasoline stations without the permission of the board of appeals after a public hearing. Other than a mention of public health, safety, and general welfare, no criteria were elaborated to guide the board. The court held the ordinance invalid, stating:

"The ordinance presented is fatally defective. The zoning board of appeals is simply given authority to permit, and obviously to refuse to permit, the erection of gasoline stations after public hearings. But what standards prescribe the grant or rejection of the permission? We find none. The ordinance is silent as to size, capacity, traffic control, number of curb cuts, location, or any other of the myriad considerations applicable to such business."[10]

A later Michigan case[11] involved an ordinance forbidding the location of inns within the agricultural district without authorization of the board. Again there was no mention of definite guidelines, but merely a call to promote the public health, safety, morals, comfort, prosperity, and general welfare. These standards were found insufficient.

Other cases holding ordinances unconstitutional for failure to prescribe standards are: *State ex rel. Selected Prop-*

---

[8] *Supra,* footnote 2.

[9] *Osius v. St. Clair Shores* (1956), 344 Mich. 693, 75 N. W. (2d) 25.

[10] Id. at page 700, 75 N. W. (2d) at page 28.

[11] *Homrich v. Storrs* (1964), 372 Mich. 532, 127 N. W. (2d) 329.

*erties, Inc., v. Gottfried* [12] (excluded gasoline stations from retail business district without first obtaining a variance permit from the board of appeals) ; and *Chicago, R. I. & P. R. Co. v. Liddle* [13] (prevented building of livestock pens within industrial district without authorization of board of adjustment).

Where a local zoning board of appeals is given authority to exercise discretion and judgment in the administration of a zoning ordinance, some standards must be prescribed for the guidance of the board in exercising the discretion and judgment with which it is vested. Where no such definite standards are written into the ordinance the door is opened "to favoritism and discrimination, a ready tool for the suppression of competition through the granting of authority to one and the withholding from another." [14]

Standards were needed in the Allouez ordinance, not only to guide the board but also to inform Humble and any other parties hoping to build filling stations of what was required of them and what factors were to be considered by the board in disposing of each application for a filling-station permit. Without standards both the board and Humble "were at sea without chart, rudder, or compass" and this was bound to create a situation in which the board could do just as it pleased.

The Allouez ordinance was defective in failing to prescribe proper standards to guide the board, and is, therefore, invalid. Since the ordinance is void on this ground it is unnecessary to consider here Humble's further attack on the ordinance on the ground that the ordinance attempted to single out filling stations in an unconstitutional classification. Furthermore, in view of the invalidity of that portion

---

[12] (1955), 163 Ohio St. 469, 127 N. E. (2d) 371.
[13] (1962), 253 Iowa 402, 112 N. W. (2d) 852.
[14] *Supra,* footnote 9, 344 Mich. at page 700, 75 N. W. (2d) at page 28.

of the ordinance that required board approval of each filling-station permit in this commercial zone, it is not necessary to consider whether the trial court was in error in holding that the board action, in refusing Humble a permit, was nonetheless discriminatory, arbitrary, and capricious. For the same reason it is not necessary to consider the scope of new evidence that may be introduced in such a certiorari proceeding as was involved here and neither is it necessary to consider the various alleged errors on evidence questions pertaining to those proceedings.

The second issue on this appeal is whether the amended ordinance of March 4, 1963, completely prohibiting filling stations in this area, has any effect on Humble's right to its permit.

Although Humble challenges this new ordinance on the ground that the town board continued an unconstitutional classification that discriminated against filling stations, it is necessary to consider this challenge only if the town may assert the new ordinance where it has been adopted a month after the certiorari and mandamus proceedings were commenced to contest the original ordinance and the zoning board's action in denying the permit.

The trial court, relying on *State ex rel. Schroedel v. Pagels* [15] concluded that the March 4, 1963, amendment to the ordinance—

". . . is invalid as an unconstitutional and unlawful *ex post facto* attempt to retroactively affect the pending certiorari and mandamus proceedings, to the detriment of vested rights already acquired by Humble."

*Schroedel* is distinguishable from the case at bar insofar as the question of vested rights is concerned. There the intended use was specifically allowed by the existing ordinance when the land was purchased and substantial outlay made.

[15] (1950), 257 Wis. 376, 43 N. W. (2d) 349.

Then the ordinance was amended to shut out the proposed use. Here, the anticipated use was never flatly permitted; permission must first have been obtained from the board of appeals.

Generally, a building permit must be obtained before vested rights arise.[16]

Other jurisdictions have held that construction must have begun,[17] that merely applying for a permit,[18] commencing a mandamus action,[19] and even getting a mandamus judgment,[20] are insufficient.

Although since its first petition in January, 1962, Humble had obtained an option on the subject property, had exercised the option, and had gone to considerable expense in developing plans for the development of the site, Humble had no vested rights as of the time when the new ordinance was passed by the town board.

But the fact that Humble did not have any vested rights at the time the new ordinance was adopted does not mean that the town could deny Humble a building permit on the ground that as of March 4, 1963, the new ordinance absolutely barred filling stations in the area. The failure of the town board under the 1947 ordinance to prescribe proper standards for the zoning board to consider in passing on requests for filling-station permits where such stations were allowed in such a commercial zone could not be patched up by the adoption of an amendment more than a year after Humble's first petition for a permit and one month after

---

[16] State ex rel. Cities Service Oil Co. v. Board of Appeals (1963), 21 Wis. (2d) 516, 124 N. W. (2d) 809; Sun Oil Co. v. Clifton (1951), 16 N. J. Super. 265, 84 Atl. (2d) 555.

[17] Lutz v. New Albany City Plan Comm. (1951), 230 Ind. 74, 101 N. E. (2d) 187.

[18] L. P. Marron & Co. v. River Vale Township (1959), 54 N. J. Super. 64, 148 Atl. (2d) 205; Gold v. Building Comm. (1939), 334 Pa. 10, 5 Atl. (2d) 367.

[19] Gay v. Lyons (1956), 212 Ga. 438, 93 S. E. (2d) 352.

[20] Ware v. Wichita (1923), 113 Kan. 153, 214 Pac. 99.

Humble had started these court proceedings based on the ordinance in effect all during its one-year battle with the town zoning officials.

Equitable considerations bar the town from giving Humble such a fast shuffle at this late stage in the game. While Humble filed its petitions and its station plans and was turned down on each occasion without any notice from the board as to its reasons for denying the permit, the board approved a request for expansion in the facilities of one of the three filling stations already in existence on the other corners of the intersection. In January of 1963 a spokesman for the zoning board wrote Humble that if it could obtain the property directly east of the subject property for use in construction of the proposed station the board would approve the permit. Humble tried in vain to buy the property and its petition for a permit was categorically denied. In March, one month after the certiorari and mandamus proceedings were commenced, the town board decided absolutely to prohibit any filling stations in this area. Without considering the evidence introduced at the circuit court trial, it is apparent that the town officials were trying to keep one jump ahead of Humble and were attempting to change the rules after they had been haled into court for what Humble believed was arbitrary, unreasonable, and capricious action.

The situations in *Schroedel* and in the instant case are similar in that in both cases there was a last-minute effort by the city to zone out a use. In *Schroedel,* the court found that the city's action was arbitrary and unreasonable. No less so was the town's action here where the town made its eleventh-hour attempt to prevent Humble from obtaining a permit to build its filling station.[21]

[21] In *Vine v. Zabriskie* (1939), 122 N. J. L. 4, 6, 3 Atl. (2d) 886, cited in *Schroedel, supra,* 257 Wis. at page 384, 43 N. W. (2d) at page 353, the New Jersey court in a case where the

The equities here are much as they were in *State ex rel. Lake Drive Baptist Church v. Bayside Village Board* [22] where the court held that whereas a church without a building permit did not acquire a vested right to construct a church on its building site by virtue of favorable intimations of a village board, its prior relationships with the village board, consisting of exchanges of correspondence in which village officials stated that the board was agreeable to the idea of a church on the mentioned site, "do provide strong equitable considerations for favorable zoning if at all reasonable." [23]

It would be manifestly unfair to allow the town board to cut Humble off in its quest for a building permit after the town has been taken to court to test the validity of its ordinance and the alleged arbitrary and unreasonable conduct of the zoning board in denying the permit. If the town's contention is upheld it would be tantamount to approving the proposition that every time a party came close to successfully challenging a town and its zoning board on its zoning actions, his gains could be legislated away by the enactment of an amendment to the ordinance. Equitable considerations barred the lower court and bar this court from giving any effect to the March 4, 1963, amendment.

ordinance was changed after filing of an application for building permit, said: "Clearly this was an eleventh-hour attempt to prevent this relator from using her property for its highest use and for which it had been zoned for seven years, during which time its assessed value had been substantially increased because it was so zoned. Such action was ill-advised, capricious, and unreasonable. It was doubtless precipitated because of public excitement and clamor. Some of this opposition was likely based upon misinformation as to the plan of development contemplated.

"However that may be, we are satisfied that the result was an arbitrary interference with the lawful and legitimate use of private property."

[22] (1961), 12 Wis. (2d) 585, 108 N. W. (2d) 288.

[23] 12 Wis. (2d) at page 603, 108 N. W. (2d) at page 298.

Thus it is unnecessary to consider the merits of Humble's challenge of the provisions of that amendment.

The third issue to be determined on this appeal is whether Humble is entitled to its writ of mandamus.

For the first time the town argues on this appeal that Humble did not comply with all the formal filing requirements of the zoning ordinance and that, therefore, Humble is not entitled to mandamus under any circumstances.[24] It is apparent that the town is trying to lock the barn long after the horse has disappeared. Humble submitted a plan for the station which had been approved by the industrial commission. No evidence was produced by the town to show that any vital documents had not been filed.

Three times the board acted on a Humble petition for a permit. Any failure on the part of Humble to follow formalities was waived by the board's three denials of the Humble applications, each time made without comment or stated reasons.

Since this court has concluded that the portion of the ordinance permitting filling stations but requiring board approval of each permit is invalid as to this attempted delegation of authority to the board, Humble had a clear legal right to the issuance of the requested permit and the appellant building inspector had a positive and plain duty to issue the permit.[25] Under the circumstances Humble was clearly entitled to the writ of mandamus.

The fourth and final issue raised on this appeal is whether costs were properly allowed by the trial court against the board of appeals in the certiorari proceedings.

The certiorari judgment awarded costs to respondents.

Sec. 62.23 (7) (e) 14, Stats., provides that:

"Costs shall not be allowed against the board unless it shall appear to the court that the board acted with gross

---

[24] Relying on *State ex rel. Coffey v. Chittenden* (1902), 112 Wis. 569, 88 N. W. 587.

[25] *Neu v. Voege* (1897), 96 Wis. 489, 71 N. W. 880.

negligence or in bad faith, or with malice, in making the decision appealed from."

Since the trial court made no finding of gross negligence, bad faith, or malice on the part of the board, the judgment, insofar as it allowed costs against the board in the certiorari proceedings, was in error and should be modified to correct that error. The town contends that the entire judgment should be set aside for this error. We think not.

*By the Court.*—Judgment in certiorari proceeding modified to eliminate taxation of costs against zoning board of appeals and, as so modified, affirmed; judgment in mandamus proceedings affirmed. Costs on appeals in both cases, No. 116 and No. 117, awarded to respondents.