Richard W. Guse and Clara Guse,
Plaintiffs-Respondents,

v.

City of New Berlin and Common Council
of the City of New Berlin,
Defendants-Appellants.

Court of Appeals

*No. 2011AP663. Submitted on briefs October 19, 2011.
—Decided January 18, 2012.*

2012 WI App 24

(Also reported in 810 N.W.2d 838.)

400

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Mark G. Blum* and *Thomas G. Schmitzer* of *Hippenmeyer, Reilly, Moodie & Blum, S.C.* of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *T. Michael Schober* of *Schober, Schober & Mitchell, S.C.* of New Berlin.

Before Brown, C.J., Neubauer, P.J., and Neal Nettesheim, Reserve Judge.

¶ 1. BROWN, C.J. The Common Council of the City of New Berlin rejected Richard and Clara Guse's application to divide their property into two lots based on New Berlin Municipal Code (NBMC) § 235–26(G),[1] which allows the Council to prohibit new lots that are smaller than or not as wide as lots in existing subdivisions, or when the existing subdivision is more than twenty-five years old. The parties agree that Guse's[2] proposed lots could have been prohibited under any of the three criteria. Guse argues, however, that the ordinance is unconstitutionally vague—because it has no standards—and that the Council's denial of his application was arbitrary, unreasonable, and discriminatory. The trial court agreed. But we see nothing vague about the ordinance; the three criteria *are* standards, easily understood. Plus, the section outlining the purpose and intent of the chapter containing the ordinance sets forth other criteria. Also, the Council's actions were neither arbitrary nor unreasonable. We reverse the trial court and reinstate the decision of the Council.

¶ 2. Guse's proposed lots are in the Hillcrest Terrace Subdivision in the City of New Berlin, which was platted in 1969. In that subdivision, the average lot is 41,265.03 square feet, with an average width of 180.91 feet. Guse proposed dividing his property into two lots that would be roughly equal in size: 29,121 square feet and 29,248 square feet. Both would have a width of 147.5 feet.

---

[1] We note that when looking at the City of New Berlin Municipal Code website today, the wording of § 235–26(G) has been changed from the version we have in the record. However, the parties both quote the same version in their briefs that appears in the record, so that is the version we analyze.

[2] Throughout this opinion, we will refer to the Guses as "Guse" for ease of reference.

¶ 3. On May 3, 2010, Guse's application to subdivide his lot went before the New Berlin Plan Commission, which recommended denial of the application based on the NBMC § 235-26(G). The Commission discussed the relatively small size of the lots and heard the complaints of several neighbors. Then, on May 11, 2010, the New Berlin Common Council took up the application. The record before the Council included the recommendation of the Commission and messages from neighboring property owners concerned about the effect of subdividing Guse's lot on the open character and "country feel" of their subdivision. The Council denied the application.

¶ 4. On June 17, 2010, Guse filed a complaint seeking certiorari review pursuant to Wis. Stat. § 236.13(5) (2009-10).[3] The parties agreed to expand the trial court record to include information on other applications involving land divisions in existing subdivisions after the passage of NBMC § 235-26(G). The trial court reversed the decision of the Council, and the City now appeals.

## DISCUSSION

*Constitutionality of NBMC § 235-26(G)*

¶ 5. We begin with the constitutionality of NBMC § 235-26(G), which is a question of law that we review without deference to the trial court. *See Walworth Cnty. v. Tronshaw*, 165 Wis. 2d 521, 525, 478 N.W.2d 294 (Ct. App. 1991). Although our review is de novo, the ordinance is presumed to be constitutional and the party

---

[3] All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise noted.

attacking it must establish its unconstitutionality beyond a reasonable doubt. *Id.* An ordinance is unconstitutionally vague if "it fails to afford proper notice of the conduct it seeks to proscribe or if it encourages arbitrary and erratic enforcement." *Id.* at 526.

¶ 6. New Berlin Municipal Code § 235–26(G) reads:

> New lots within existing residential subdivisions may be prohibited under any of the following criteria:
>
> (1) When the new lot area is less than the average of the existing lots within the subdivision excluding unbuildable lots; or
>
> (2) When the new lot width is less than the average width of the existing lots within the subdivision excluding unbuildable lots; or
>
> (3) The subdivision was platted over 25 years ago.

Citing *State ex rel Humble Oil & Refining Co. v. Wahner*, 25 Wis. 2d 1, 130 N.W.2d 304 (1964), Guse contends that § 235–26(G) is unenforceable because it does not set adequate standards for the board to consider when deciding applications.

¶ 7. In *Humble Oil*, our supreme court addressed a city ordinance permitting filling stations only if approved by the zoning board of appeals. *Humble Oil*, 25 Wis. 2d at 7. The ordinance itself provided no standards for the board to consider when coming to a decision, but a separate section of the ordinance stated that "[i]n interpreting and applying the provisions of this ordinance they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare." *Id.* The *Humble Oil* court acknowledged that when an

ordinance vests discretionary power in administrative officials, "it must prescribe standards to guide their action." *Id.* So the issue in that case was whether "promotion of the public health, safety, convenience, prosperity or general welfare" was enough of a standard. *See id.* The supreme court found that it was not. *Id.* at 11.

¶ 8. In coming to its decision, the *Humble Oil* court distinguished its case from three prior Wisconsin cases upholding city ordinances. *Id.* at 7–9. First, in *Lerner v. Delavan*, 203 Wis. 32, 36, 40, 233 N.W. 608 (1930), an ordinance was upheld that required a permit to run a junk yard, but in addition specified that the applications for permits had to contain the applicant's "name, the place where the business is to be carried on, and an enumeration of the articles and merchandise to be handled therein." The court reasoned that the ordinance did not give the Council an arbitrary power to grant or deny licenses because the application requirements in effect laid out the criteria to be considered. *Id.* at 36.

¶ 9. Next, in *Wadhams Oil Co. v. Delavan*, 208 Wis. 578, 578–79, 582, 243 N.W. 224 (1932), the supreme court upheld an ordinance prohibiting the operation of gasoline stations and other businesses dealing with cars within 165 feet of the main street of a city without city council consent. Relying on *Lerner*, the *Wadhams* court concluded that the ordinance did not vest the Council with arbitrary power because the intent was that the Council should exercise sound discretion with reference to the placement of certain types of businesses. *Wadhams*, 208 Wis. at 581.

¶ 10. Finally, in *Smith v. Brookfield*, 272 Wis. 1, 3, 9–10, 74 N.W.2d 770 (1956), the court sustained an ordinance requiring the submission of location and plan of operation to the board before the board would allow

certain enumerated uses, including gravel pits. The supreme court based its decision in part on the preamble to the ordinance, which laid out some general welfare objectives.[4] *Id.* at 5, 10. It reasoned that the location and place of operation plans that had to be submitted to the board were the criteria to be considered when deciding what was in the interest of the general welfare. *Id.*

¶ 11. Reading *Humble Oil* in conjunction with *Lerner*, *Wadhams*, and *Smith*, we conclude that ordinances may vest boards with some (and even significant) discretion without being unconstitutionally vague. What an ordinance may not do is blanket the board with *unfettered* discretion. The problem with the ordinance in *Humble Oil* was that it contained absolutely no criteria to consider when deciding whether granting or denying a permit for a filling station would benefit the general welfare. *See Humble Oil*, 25 Wis. 2d at 8–9. That is simply not the case here.

¶ 12. New Berlin Municipal Code § 235–26(G) has much more specific standards than the commonplace template that the *Humble Oil* court had in front of it. In fact, it is more specific than the ordinances upheld in *Lerner* and *Smith*. In both *Lerner* and *Smith*, the challenged ordinances contained application requirements that were construed as giving guidance to the decision-making bodies in those cases. *See Lerner*, 203 Wis. at 36; *Smith*, 272 Wis. at 5, 10. In this case,

---

[4] The preamble stated that the ordinance was adopted "in order to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare, *all in accordance with a comprehensive zoning plan.*" *Smith v. Brookfield*, 272 Wis. 1, 3, 74 N.W.2d 770 (1956).

§ 235–26(G) lays out more than just a guide, it states specific criteria to be considered by the Council—size of the proposed lot(s) versus the average size of existing lots, as well as age of the subdivision. In addition, NBMC § 235–1 outlines general welfare issues to be considered when deciding whether to approve lots that are subject to rejection under § 235–26(G).[5] With all of

---

[5] Unlike the vague general welfare objectives in the *State ex rel Humble Oil & Refining Co. v. Wahner*, 25 Wis. 2d 1, 130 N.W.2d 304 (1964) ordinance, NBMC § 235–1 sets forth a very specific and exhaustive list of general welfare criteria for the Council to consider in NBMC ch. 235 decisions. First, § 235–1A.(1) states that "[t]he purpose of this chapter is to regulate and control the division of land within the City of New Berlin in order to promote the public health, safety, prosperity, aesthetics and general welfare of the City . . . ." Then, § 235–1B. states that the intent of ch. 235 is to regulate land division in order to "[o]btain the wise use, conservation, protection, and proper development of the City's soil, water, wetland, woodland, and wildlife resources and attain a proper adjustment of land use and development to the supporting and sustaining natural resourse base;" "[i]mplement the objectives and policies of the City's Master Plan;" "[l]essen congestion in the streets and highways;" [f]urther the orderly layout and appropriate use of land;" "[s]ecure safety from fire, panic, and other dangers;" "[p]rovide adequate light and air;" [p]revent the overcrowding of land; "[a]void undue concentration of population;" "[f]acilitate adequate provision for housing, transportation, water, sewerage, schools, parks, playgrounds, and other public requirements;" "[s]ecure safety from flooding, water pollution, disease, and other hazards;" "[p]revent flood damage to persons and properties and minimize expenditures for flood relief and flood control projects;" "[p]revent and control erosion, sedimentation, and other pollution of surface and subsurface waters;" "[p]reserve natural vegetation and cover and promote the natural beauty of the City;" "[r]estrict building sites on floodlands, areas covered by poor soils, or in other areas poorly suited for development;" "[f]acilitate the further division of larger tracts

those standards, § 235–26(G) is not unconstitutionally vague.[6]

## The Council's Decision

¶ 13. Guse next contends that the trial court's decision was appropriate because the City's denial of his proposed lots was arbitrary, unreasonable, and discriminatory. *See* WIS. STAT. § 236.13(5) ("The court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory."). On appeal

---

into smaller parcels of land;" [p]romote monumenting of land subdivided and conveyancing by accurate legal description;" "[e]nsure adequate legal description and proper survey monumentation of subdivided land;" "[p]rovide for the administration and enforcement of this chapter;" and "[p]rovide penalties for its violation." Sec. 235–1B.(1)-(19). While many of these factors are not relevant to this case, we recite the list in its entirety to emphasize how much more specific the criteria for the Council's consideration in this case was than what was present in *Humble Oil*.

[6] Guse also contends that NBMC § 235–26(G) is not enforceable because it does not relate to public health, welfare, safety, or morals as required by WIS. STAT. § 62.23(7)(a). We reject this argument. Section 62.23(7)(a) specifically states that it is to be "liberally construed in favor of the city." In addition, the concept of public welfare is broad and inclusive. *State ex rel. Saveland Park Holding Corp. v. Wieland*, 269 Wis. 262, 272, 69 N.W.2d 217 (1955). "The values it represents are spiritual as well as physical, aesthetic as well as monetary." *Id.* (citation omitted; emphasis omitted). Maintaining average lot size, width, and age of structures in a subdivision, *see* § 235–26(G), are all reasonably related to the NBMC § 235–1A. objective of promoting the "prosperity, aesthetics and general welfare of the City." And that objective is related to the public welfare. *See Saveland Park Holding Corp.*, 269 Wis. at 267.

from a decision on certiorari, we review the decision of the Council, not the decision of the trial court. *Wood v. City of Madison*, 2003 WI 24, ¶ 12, 260 Wis. 2d 71, 659 N.W.2d 31. Whether an approving authority exceeded its statutory or constitutional authority in applying ordinances governing land subdivisions is a question of law, which we review de novo. *Hoepker v. City of Madison Plan Comm'n*, 209 Wis. 2d 633, 644, 563 N.W.2d 145 (1997).

¶ 14. Guse separates his complaints into an argument that the Council's decision was arbitrary and unreasonable because the Guse lot is oversized compared to the lots across the street, and an argument that the Council's decision was discriminatory because the Council had previously approved similar lots in other subdivisions. The City's response to Guse's arguments is basically that Guse has not shown, and cannot show, that the Council's decision was arbitrary, unreasonable, or discriminatory simply by pointing out that another decision could have been reasonable, as well. We agree with the City.

¶ 15. First, we consider Guse's argument that the Council's decision was arbitrary. Arbitrary action is action that lacks a rational basis and is the result of an unconsidered, willful or irrational choice, not the result of the "sifting and winnowing" process. *Wisconsin Professional Police Ass'n v. Public Serv. Comm'n*, 205 Wis. 2d 60, 74, 555 N.W.2d 179 (Ct. App. 1996) (citing *Robertson Transp. Co. v. Public Serv. Comm'n*, 39 Wis. 2d 653, 661, 159 N.W.2d 636 (1968)). Guse argues that the decision of the Council was arbitrary and unreasonable because it lacked a "health, safety, or general welfare basis." Guse supports that argument by pointing out that there are two properties on his side of

the street and three properties on the other. Therefore, he argues, there can be no justification for denying him the right to subdivide his land such that there are three lots on his side of the street, as well.

■■

¶ 16. We cannot simply look at aerial maps and say, as Guse urges, that the Council's decision was arbitrary. While the map of the subdivision indicates (at least to some degree) the relative sizes of the lots, it does not tell us when or how the lots across the street became the size that they are or even whether NBMC § 235–26(G) was in force when those lots came into existence. Furthermore, even if Guse could show that smaller lots across the street were approved under the same ordinance, we would not necessarily find that the decision was arbitrary. "Consistency . . . is a virtue both in administrative and in judicial determinations, but inconsistencies in determinations arising by comparison are not proof of arbitrariness or capriciousness." *Robertson*, 39 Wis. 2d at 661. Here, the evidence we have shows that the Council considered the criteria set forth NBMC § 235–26(G), along with several neighbors' opposition to the lot division, and concluded that the lot division should not be approved. In other words, there was a rational basis for the Council's decision.

■■

¶ 17. Finally, we look at Guse's discrimination argument. Guse claims that five other applications in the record show that the Council's decision was discriminatory because those lot divisions, which were ultimately approved, created lots smaller than the average in existing subdivisions and there is no evidence that NBMC § 235–26(G) was even considered. If

the facts alleged by Guse were supported by the record, we could consider the merits of this issue—but they are not.

¶ 18. The record reflects that on October 13, 2010, the parties stipulated to have the record expanded on certiorari review to include:

> other situations which the Plaintiffs assert are comparable to the situation alleged by the Plaintiffs herein provided that such additional situations involve:
>
> (a) A land division;
>
> (b) In an existing subdivision; and
>
> (c) Which occurred after the Ordinance in question was passed on September 10, 2003.

Put another way, the stipulation includes all applications during the specified time period, without regard to size of the lot or age of the subdivision. Guse asserts that "[n]one of the proposed lots meet the average total square feet in the subdivision in which they were located (as in the Plaintiffs' situation)." That assertion, however, is not accompanied by a citation to the record, and the City contends that it is unsupported by the record. Our review of the applications did not show how any of the proposed lots compared in size to other lots in their respective subdivisions.[7] Without that key piece of information, as the City points out, we can assign no

---

[7] We looked at all of the applications in the record but did not exhaustively search for comparisons between the proposed lot sizes and averages for the subdivisions in question because it is not our job to do so. *See* WIS. STAT. RULE 809.19(1)(e) ("The argument on each issue . . . is to contain the contention of the appellant, the reasons therefore, with citations to the authorities, statutes and parts of the record relied on.").

significance to the Council's alleged lack of consideration of NBMC § 235–26(G). On this record, we cannot even tell whether there was any reason to discuss it. Guse simply has not shown that the Council's decision was discriminatory.[8]

*By the Court.*—Order reversed.

---

[8] Guse also contends that the Council's decision was discriminatory because Guse was treated differently from others who applied under the same ordinance and the only difference between his application and theirs was political pressure put on the Aldermen by other residents of Guse's subdivision. Based on our reasoning that the record does not show that Guse was treated differently from similarly situated applicants, we certainly cannot conclude that the only difference between his application and those that were approved was the neighbors' opposition. And, while we need not get to it, we observe that neighbors weigh-in on zoning applications all the time—sometimes objecting at the zoning hearing, sometimes objecting to their elected officials and sometimes both. Nothing out of the ordinary occurred here.